UNITED STATES of America,

v.

Phillipe KOUZMINE, et al., Defendants.

No. S1 95 Cr. 846 (LAK).

United States District Court,
S.D. New York.

April 5, 1996.

William E. Craco, Assistant United States Attorney and Mary Jo White, United States Attorney, New York City, for the U.S.

Barry H. Berke, Kramer, Levin, Naftalis, Nessen, Kamin & Frankel, New York City, for Defendant Thilo Agthe.

Daniel Meyers, New York City, for Defendant Valeri Ganenko.

Stuart E. Abrams, David S. Hammer, Frankel & Abrams, New York City, for Defendant James T. Wilson.

Gerald J. McMahon, New York City, for Defendant Goulnar Esjanova.

Alan G. Polak, New York City, for Defendant Elena Kopteva.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This decision disposes of defendants' pretrial motions to the extent not ruled upon in open court.

*Severance*

Counts 1, 3, and 5 through 8 (the "ITB Counts") charge an immigration fraud conspiracy and related substantive offenses led by one Filimanov that allegedly took place at the offices of Kazakhstan United Corp. ("KUC") and ITB New York State Corp., both located in the same premises at 855 Avenue of the Americas. Counts 2, 4 and 9 (the "Ganenko/Kouzmine Counts"), on the other hand, charge a separate and distinct immigration fraud conspiracy and related

substantive counts that allegedly took place after Ganenko and Kouzmine, who initially were involved with Filimanov at KUC, had a falling out with Filimanov and went into business for themselves at another location.

Agthe and Wilson, who are attorneys who were employed by KUC and worked at the 855 Avenue of the Americas location, are alleged to have participated in the conspiracy and certain substantive offenses that are the subject of the ITB Counts, but not in those involved in the Ganenko/Kouzmine Counts. Indeed, the government does not suggest that they had any knowledge whatever of the latter offenses. They move to sever the ITB Counts from the Ganenko/Kouzmine Counts on the ground that their joinder in the same indictment is improper.

■ Joinder of offenses in a multi-defendant indictment is governed by Rule 8(b). *E.g., United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir.1989); *United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir.1988). It permits such joinder only where, *inter alia*, the defendants "have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." FED.R.CRIM.P. 8(b). Of course, in the broadest sense, both conspiracies are part of the same series of acts or transactions constituting offenses—just as the 1995 World Series was part of the same series of acts or transactions that began with Abner Doubleday. But, as this example demonstrates, Rule 8(b) cannot possibly be read so broadly if it is to have any practical meaning. The fundamental question therefore is whether these two conspiracies properly may be said to constitute parts of "the same series of acts or transactions constituting an offense or offenses" as that phrase is used in the Rule.

Several cases in this circuit have concluded that the joinder of distinct conspiracies as the government has done here is improper. In *United States v. Lech,* 161 F.R.D. 255 (S.D.N.Y.1995), for example, Judge Sotomayor held that the joinder of three similar albeit separate conspiracy charges was improper, notwithstanding the presence of a common defendant and similar objects, because there was no suggestion that the moving defendant knew of or participated in the schemes other than the one with which he was charged. *See also United States v. Giraldo*, 859 F.Supp. 52 (E.D.N.Y.1994); *United States v. Menashe*, 741 F.Supp. 1135 (S.D.N.Y.1990); *United States v. Gentile*, 60 F.R.D. 686 (E.D.N.Y.1973); 1 CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL § 144, at 515 & n. 39 (1982 & Supp.1995) (citing cases). This seems entirely correct, as it is hard to see why the moving defendant in that case should have been burdened with the risks inherent in joinder of those alleged conspiracies simply because he had the misfortune of being charged with another defendant who was subject also to other accusations.

■ So too here. Given the conceded falling out between Filimanov and Ganenko and Kouzmine, there is no colorable argument in this case, as the government acknowledges, that both conspiracies alleged here were part of a single overarching scheme. Nor is there an identity of participants. Hence, the justification for trying the defendants charged only on the ITB Counts in a case involving also the Ganenko/Kouzmine Counts is limited.

The government's position rests on *Attanasio*, 870 F.2d 809, which stated that Rule 8(b) is satisfied where the acts are " 'unified by some substantial identity of facts or participants,' or 'arise out of a common plan or scheme ...' " *Id.* at 815 (quoting *United States v. Porter*, 821 F.2d 968, 972 (4th Cir. 1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988)). It maintains that both of the conspiracies charged in this case had similar objects, that Kouzmine and Ganenko participated in both schemes and dealt with the same undercover agent and confidential informant, and that the Kouzmine/Ganenko conspiracy arose in consequence of their falling out with Filimanov.

With due respect, the government's argument proves too much. Precisely these arguments were rejected in *Lech* and *Menashe* for the same reason—there was no evidence that the defendants joined in the indictments were aware of or joined in all of the schemes alleged. That analysis is equally applicable

here. *Attanasio* and the other cases cited by the government are of no help to it because each charge joined in the indictments there at issue involved a common purpose to which every defendant allegedly was committed.[1]

*Motion to Suppress*

■ Agthe moves to suppress the fruits of a search of 855 Avenue of the Americas conducted pursuant to a warrant issued by Magistrate Judge Francis. The search warrant in question authorized seizure of "all business records, files, papers, computer hard drives and discs, correspondence and other material constituting evidence of the offenses listed above." Agthe attacks this as a general warrant, contending that the fruits of the search should be suppressed because the warrant did not sufficiently particularize the things to be seized and that this failure is not excused under the "all records" exception[2] because the affidavit upon which the warrant issued did not demonstrate that all or most of the activities of KUC and ITB were illegal. The government rejoins that the warrant is sufficiently particular and, in any case, that suppression should be denied because the seizure was made in objectively reasonable reliance on the warrant. *See United States v. Leon,* 468 U.S. 897, 919–21, 104 S.Ct. 3405, 3418–19, 82 L.Ed.2d 677 (1984).

Agthe's objection to the breadth of the warrant is not frivolous. The agent's affidavit demonstrated his awareness that he sought visa petitions filed with the INS and a letter soliciting recipients to telephone ITB to inquire about obtaining visas, perhaps among other records. The government, moreover, tellingly indicates that it would have been obvious to agents familiar with the immigration process that "blank and completed INS forms; letters to the INS discussing the employment, education and credentials of foreign aliens; blank and com-

pleted foreign diplomas; and so forth" would be the pertinent materials. (Gov.Br. 27) Yet the warrant did not specify even those categories of documents, which distinguishes it from the warrant upheld in *Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976). *See United States v. Buck,* 813 F.2d 588, 591 (2d Cir.), *cert. denied,* 484 U.S. 857, 108 S.Ct. 167, 98 L.Ed.2d 121 (1987). Moreover, *Andresen* and other cases passing upon the validity of warrants, especially for documents, have placed a good deal of weight on whether the warrant was as particular as reasonably could have been expected in the circumstances. *Andresen,* 427 U.S. at 480 n. 10, 96 S.Ct. at 2748 n. 10; 2 WAYNE R. LaFAVE, SEARCH AND SEIZURE § 4.6(d), at 572–573 & n. 100 (1996) (citing cases). This Court, however, need not decide whether this warrant was excessively broad, as *Leon*'s good faith exception applies here.

*Leon* held that evidence seized pursuant to a facially valid search warrant, later found to be invalid, is admissible if the agent executing it did so in good faith and in objectively reasonable reliance on the warrant. The warrant in this case was issued by Magistrate Judge Francis and, putting aside the alleged defect in particularity, was valid on its face. The question, therefore, is "whether a reasonably well-trained officer should have known that Judge [Francis'] warrant was impermissibly broad," assuming for purposes of argument that it was. *Buck,* 813 F.2d at 592.

Agthe argues that *United States v. George,* 975 F.2d 72 (2d Cir.1992), requires the conclusion that the agents should have known that the warrant was invalid. The warrant in *George* contained a list of specific items to be seized followed by the catch-all language "[o]ther evidence relating to the commission of a crime." Acting pursuant to the catch-all

---

**1.** Wilson and Agthe move also to sever their trial from that of the other defendants pursuant to Rule 14, arguing that they may be forced to disclose privileged attorney-client communications to defend themselves and that their actions in doing so may prejudice other defendants. The short answer to the argument is that Wilson and Agthe were employed by KUC. Any attorney-client privilege belongs to that corporation, not to the lawyers' co-defendants. Moreover, the

government has proffered a waiver of the privilege by KUC, which is not disputed by the defendants. In all the circumstances, there is no showing of prejudice sufficient to warrant a Rule 14 severance on these grounds.

**2.** *See generally, e.g., United States v. Burke,* 718 F.Supp. 1130, 1139–41 (S.D.N.Y.1989).

language alone, the officers in that case seized a shotgun that did not even arguably fall within any of the specific descriptions that preceded it. The Court held that the warrant was *impermissibly broad* and that *Leon*'s good faith exception to the exclusionary rule did not apply because *Buck* had established that "warrants containing only a catch-all description of the property to be seized" are insufficiently particular. *Id.* at 77 (quoting *Buck,* 813 F.2d at 593 n. 2). It noted that "it was quite clear when this warrant was executed that 'limits' to a search consisting only of a broad criminal statute were invalid ..." *Id.* at 77. It relied in particular on the fact that "the 'evidence' for which the officers were to search under the catch-all clause [of the warrant at issue was] not limited either to a generic classification, e.g., records or documents, [citation omitted], or, even more egregiously, to a particular crime." *Id.* at 78.

■ Here the warrant was limited in two ways not present in *George.* It authorized seizure only of generic classifications of materials—business records, files, papers, computer hard drives and discs, correspondence and other material—as distinguished from "other evidence relating to the commission of a crime." And it required that any such materials constitute evidence of the particular crimes detailed in the application for the warrant. It differed also from the warrant in *Buck,* which authorized seizure of "papers, things or property of any kind relating of previously described crime" of armored car robbery, in that this warrant was somewhat more specific and, moreover, the things listed—documents and other data storage media—corresponded more closely with the alleged offense of fraud. Whether these distinctions in the last analysis permit the conclusion that the warrant is valid does not answer the question whether the evidence must be suppressed. As the Supreme Court said in *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), and the Circuit reiterated in *Buck,* an officer is not "required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." *Buck,* 813 F.2d at 592 (quoting *Sheppard,* 468 U.S. at 989–90, 104 S.Ct. at 3428). The officer is justified in relying on the warrant unless its invalidity is clear, which is not the case here. Accordingly, the motion to suppress is denied.

*Venue*

■ Finally, defendant Wilson argues that count 6, which accuses him of violating 18 U.S.C. § 1001 by preparing and filing with the INS a visa application containing materially false information, should be dismissed for improper venue. He contends that venue lies only in the District of Vermont, the district in which the application was filed, and not in this district, where the application was completed.

Wilson relies on *Travis v. United States,* 364 U.S. 631, 81 S.Ct. 358, 5 L.Ed.2d 340 (1961), which held that venue was proper only in the District of Columbia for a Section 1001 prosecution stemming from the submission of a false "non-Communist" affidavit to the National Labor Relations Board.[3] In *Travis,* the Supreme Court interpreted that portion of Section 1001 which limits the section's applicability to statements made "in any matter within the jurisdiction of any department or agency of the United States" as requiring that the affidavit have been filed with the NLRB before the offense could be deemed complete. Wilson concedes, however, as he must in the face of considerable precedent,[4] that *Travis* did not establish a *per se* rule that venue for prosecutions under

---

3. The statute there involved was Section 9(h) of the National Labor Relations Act, as amended by the Taft–Hartley Act, 61 Stat. 136, 146 (1947), and further amended by the Act of Oct. 22, 1951, § 1(d), 65 Stat. 601, 602 (1951), repealed by the Labor Management Reporting and Disclosure Act of 1959 (Landrum–Griffin Act), 73 Stat. 519, 525 (1959).

4. *E.g., United States v. Stephenson,* 895 F.2d 867, 875 (2d Cir.1990); *United States v. Mendel,* 746 F.2d 155, 165 (2d Cir.1984), *cert. denied,* 469 U.S. 1213, 105 S.Ct. 1184, 84 L.Ed.2d 331 (1985); *United States v. DeLoach,* 654 F.2d 763, 767 (D.C.Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 366 (1981); *United States v. Herberman,* 583 F.2d 222 (5th Cir.1978); *Imperial Meat Co. v. United States,* 316 F.2d 435, 440 (10th Cir.1963).

Section 1001 lies only in the district in which a false statement is filed. Instead, he argues that the false statement he is alleged to have made in the visa application did not come within the INS's jurisdiction until the application was filed and the offense was complete.

 The point at which the offense is complete, however, does not determine venue. Violations of Section 1001 are continuing offenses for which venue is proper in any district in which the offense began, continued, or was completed. *See* 18 U.S.C. § 3237(a) (1988); *United States v. Candella*, 487 F.2d 1223, 1227–28 (2d Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1563, 39 L.Ed.2d 872 (1974). This rule applies "[e]xcept as otherwise expressly provided by enactment of Congress[.]" 18 U.S.C. § 3237(a). The Supreme Court's opinion in *Travis* did not rely upon the fact that the offense was not complete until the affidavit was filed. Rather, it held that Section 9(h) of the National Labor Relations Act made filing of the "non-Communist" affidavit a condition precedent to a union's use of any of the NLRB's procedures. It therefore concluded that filing of the affidavit was necessary for jurisdiction of the NLRB to exist and, in consequence, for violation of Section 1001. 364 U.S. at 635–36, 81 S.Ct. at 361.[5]

Here, Wilson is mistaken in his assertion that the INS had no interest in the visa applicant before he filed an application on her behalf. The INS clearly had jurisdiction over an alien resident's status in the sense contemplated by the Supreme Court in *Travis* even without Wilson's alleged action. Wilson has pointed to no limitation on the jurisdiction of the INS comparable to that imposed on the NLRB by Section 9(h) of the NLRA. Nor has he pointed to any provision expressly limiting venue for violations of Section 1001, as required by 18 U.S.C. § 3237(a). Thus, for purposes of Section 1001, the allegedly false statement was made in a "matter within the jurisdiction" of the INS.

*Conclusion*

The motion to sever the ITB Counts from the Ganenko/Kouzmine Counts is granted. The trial of the ITB Counts will proceed on the scheduled trial date with the trial of the Ganenko/Kouzmine Counts to follow immediately thereafter. All other previously unresolved motions are denied.

SO ORDERED.

---

**5.** The Second Circuit has held that *Travis* is limited to the unusual statute there at issue. *United States v. Slutsky*, 487 F.2d 832, 839 n. 8 (2d Cir.1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 287 (1974). *Accord, United States v. Ruehrup*, 333 F.2d 641, 643 (7th Cir.), *cert. denied*, 379 U.S. 903, 85 S.Ct. 194, 13 L.Ed.2d 177 (1964), *Imperial Meat Co. v. United States*, 316 F.2d 435, 440 (10th Cir.1963).