UNITED STATES of America,

v.

Usama BIN LADEN, a/k/a "Usamah Bin–Muhammad Bin–Ladin," a/k/a "Shaykh Usamah Bin–Ladin," a/k/a "Abu Abdullah," a/k/a "Mujahid Shaykh," a/k/a "Hajj," a/k/a "Abdul Hay," a/k/a "al Qaqa," a/k/a "the Director," a/k/a "the Supervisor," a/k/a "the Contractor," Muhammad Atef, a/k/a "Abu Hafs," a/k/a "Abu Hafs el Masry," a/k/a "Abu Hafs el Masry el Khabir," a/k/a "Taysir," a/k/a "Sheikh Taysir Abdullah," a/k/a "Abu Fatimah," a/k/a "Abu Khadija," Ayman Al Zawahiri, a/k/a "Abdel Muaz," a/k/a "Dr. Ayman al Zawahiri," a/k/a "the Doctor," a/k/a "Nur," a/k/a "Ustaz," a/k/a "Abu Mohammed," a/k/a "Abu Mohammed Nur al-Deen," Mamdouh Mahmud Salim, a/k/a "Abu Hajer al Iraqi," a/k/a "Abu Hajer," Khaled Al Fawwaz, a/k/a "Khaled Abdul Rahman Hamad al Fawwaz," a/k/a "Abu Omar," a/k/a "Hamad," Ali Mohamed, a/k/a "Ali Abdelseoud Mohamed," a/k/a "Abu Omar," a/k/a "Omar," a/k/a "Haydara," a/k/a "Taymour Ali Nasser," a/k/a "Ahmed Bahaa Eldin Mohamed Adam," Wadih El Hage, a/k/a "Abdus Sabbur," a/k/a "Abd al Sabbur," a/k/a "Wadia," a/k/a "Abu Abdullah al Lubnani," a/k/a "Norman," a/k/a "Wa'da Norman," a/k/a "the Manager," a/k/a "Tanzanite,"

---

Ibrahim Eidarous, a/k/a "Ibrahim Hussein Abdelhadi Eidarous," a/k/a "Daoud," a/k/a "Abu Abdullah," a/k/a "Ibrahim," Adel Abdel Bary, a/k/a "Adel Mohammed Abdul Almagid Abdel Bary," a/k/a "Abbas," a/k/a "Abu Dia," a/k/a "Adel," Fazul Abdullah Mohammed, a/k/a "Harun," a/k/a "Harun Fazhl," a/k/a "Fazhl Abdullah," a/k/a "Fazhl Khan," Mohamed Sadeek Odeh, a/k/a "Abu Moath," a/k/a "Noureldine," a/k/a "Marwan," a/k/a "Hydar," a/k/a "Abdullbast Awadah," a/k/a "Abdulbasit Awadh Mbarak Assayid," Mohamed Rashed Daoud Al-'Owhali, a/k/a "Khalid Salim Saleh Bin Rashed," a/k/a "Moath," a/k/a "Abdul Jabbar Ali Abdel–Latif," Mustafa Mohamed Fadhil, a/k/a "Mustafa Ali Elbishy," a/k/a "Hussein," a/k/a "Hussein Ali," a/k/a "Khalid," a/k/a "Abu Jihad," Khalfan Khamis Mohamed, a/k/a "Khalfan Khamis," Ahmed Khalfan Ghailani, a/k/a "Fupi," a/k/a "Abubakary Khalfan Ahmed Ghailani," a/k/a "Abubakar Khalfan Ahmed," Fahid Mohammed Ally Msalam, a/k/a "Fahad M. Ally," Sheikh Ahmed Salim Swedan, a/k/a "Sheikh Bahamadi," a/k/a "Ahmed Ally," Defendants.

No. S(7) 98 CR 1023 LBS.

United States District Court, S.D. New York.

May 29, 2001.

Mary Jo White, United States Attorney for the Southern District of New York, Patrick J. Fitzgerald, Kenneth M. Karas, Paul W. Butler, Assistant United States Attorneys, New York City, for Plaintiff U.S.

Frederick H. Cohn, David Preston Baugh, Laura Gasiorowski, New York City, for Defendant Al-'Owhali.

David A. Ruhnke, David Stern, New York City, for Defendant Khalfan Khamis Mohamed.

Sam A. Schmidt, Joshua L. Dratel, Kristian K. Larsen, New York City, for Defendant El Hage.

Anthony L. Ricco, Edward D. Wilford, Carl J. Herman, Sandra A. Babcock, New York City, for Defendant Odeh.

**OPINION**

SAND, District Judge.

During the guilt phase of this case, the Court took two actions with respect to venue. First, in a ruling from the bench on April 23, 2001, we dismissed for lack of venue Count 308 of the Indictment [1] which alleges a violation of 18 U.S.C. § 1001(a)(2). Second, in our charge to the jury delivered on May 9–10, 2001, we submitted 18 U.S.C. § 3238 as the sole basis upon which to determine venue for the four conspiracy counts.[2] This Opinion sets forth in detail the Court's reasons for those two decisions.

## I. DISMISSAL OF THE FALSE STATEMENT COUNT [3]

Count 308 of the Indictment charged Defendant Wadih El Hage with a violation of 18 U.S.C. § 1001(a)(2)—that is, knowingly and willfully making a materially false statement to the Federal Bureau of Investigation. Section 1001(a)(2) provides, in relevant part, that:

> [W]hoever, in any matter within the jurisdiction of the executive ... branch of the Government of the United States, knowingly and willfully ... makes any materially false, fictitious, or fraudulent statement or representation ... shall be fined under this title or imprisoned not more than 5 years, or both.

The evidence adduced at trial showed that, on August 20, 1998, Special Agents of the FBI conducted two face-to-face interviews of Mr. El Hage. The first interview occurred in the afternoon at Mr. El Hage's home in Arlington, Texas, and the second occurred later that same evening at the FBI's Dallas field office. (Trial Tr. at 3045–46.) During those interviews, Mr. El Hage stated that he did not personally

1. Hereinafter, all references to "the Indictment" and any of the count numbers therein are specifically to the unrevised version of the Seventh Superseding Indictment.

2. The conspiracy counts allege violations of 18 U.S.C. § 2332(b)(2), 18 U.S.C. § 1117, 18 U.S.C. §§ 2332a(a)(1) & (a)(3), and 18 U.S.C. § 844(n).

3. Originally, the Indictment charged Defendant El Hage with a total of three counts of making materially false statements in violation of 18 U.S.C. § 1001(a)(2). However, the Government voluntarily withdrew two of these counts after it provisionally concluded its case-in-chief on April 4, 2001, thus leaving only Count 308 for the jury's consideration. (See Gov't Summ. of Proof (Apr. 5, 2001) at 17.)

know Mohamed Sadeek Odeh, a co-defendant in this case. Furthermore, when shown two photographs of Odeh, Mr. El Hage stated that he did not recognize the depicted individual. (Trial Tr. at 3051–53.) To establish its criminal allegations under Count 308, the Government offered at trial substantial testimonial and documentary evidence that Mr. El Hage's statements to the FBI in Texas were in fact false. *See, e.g.*, GX 213A–T (translation of a wiretapped February 1997 telephone conversation between El Hage and Odeh); *see also* Gov't Summ. of Proof (Apr. 5, 2001) at 15 (listing the Government's proof as to Count 308).

On April 12, 2001, during oral argument on defendants' various motions for judgments of acquittal, counsel for Mr. El Hage challenged venue as to Count 308. (Trial Tr. at 3927–30.) Briefing papers were thereafter submitted by the Government on April 16, and by Mr. El Hage on April 19 and 20. Ultimately, in a ruling from the bench on April 23, the Court granted the motion and dismissed Count 308. (Trial Tr. at 4545–46.)

## A. *Continuing Offense Theory*

The Government argues that venue for Count 308 is properly laid in the Southern District of New York because the crime of making false statements can be considered a continuing offense under 18 U.S.C. § 3237.[4] While this general assertion may be true in some circumstances, the specific facts pertaining to Mr. El Hage indicate that it is inapposite here.

An examination of all the cases cited by the Government reveals why those courts found the section 1001 violation before them to be "continuing" for purposes of

section 3237 venue. In each of those decisions, the shared factual characteristic is that there existed a geographic discontinuity between the defendant's physical *making* of the disputed statement, whether oral or written, and the actual *receipt* of that statement by the relevant federal authority.

For example, in *United States v. Candella*, 487 F.2d 1223 (2d Cir.1973), the defendants were convicted in the Southern District of New York of submitting false affidavits and bills of lading in a matter within the jurisdiction of the United States Department of Housing and Urban Development (HUD). The falsified documents were prepared, executed, and hand-delivered by the defendants to unspecified New York City officials in Brooklyn. These officials in turn conveyed the documents to the Manhattan office of the city agency responsible for reviewing and processing defendants' documents on behalf of HUD. Although the Court of Appeals agreed that the false statements offenses had begun in the Eastern District of New York (Brooklyn), it held that the crimes were complete upon their receipt in the Southern District of New York (Manhattan). *See id.* at 1227–28. Tellingly, the *Candella* court equated the role played by the unnamed city officials in Brooklyn with that of the post office. *See id.* at 1228. Venue in the Southern District of New York was thus found to be appropriate under section 3237.

All of the other Second Circuit cases relied upon by the Government similarly involve geographic discontinuities between the making of the false statement and its receipt by the appropriate federal authority. *See United States v. Fabric Garment*

---

4. 18 U.S.C. § 3237 provides, in pertinent part, that "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be ... prosecuted in any district in which such offense was begun, continued, or completed."

*Co.*, 262 F.2d 631 (2d Cir.1958) (false forms to the New York Quartermaster Procurement Agency dispatched from Brooklyn, but received in Manhattan); *United States v. Kouzmine*, 921 F.Supp. 1131 (S.D.N.Y. 1996) (false visa application to the Immigration and Naturalization Service filed in the District of Vermont, but completed in the Southern District of New York); *United States v. Culoso*, 461 F.Supp. 128 (S.D.N.Y.1978) (false loan application to the Small Business Administration prepared in the Eastern District of New York, but submitted in Manhattan); *see also United States v. Stephenson*, 895 F.2d 867 (2d Cir.1990) (false statements over the telephone; defendant in the District of Columbia, but federal agent in New York).

■ In marked contrast, Mr. El Hage's allegedly false statements to the FBI were uttered and received wholly inside Texas. Since there was no geographic (or even temporal) discontinuity, the offense charged in Count 308 began, continued, and was completed in just one federal judicial district—i.e., the Northern District of Texas. Perhaps most revealing is the fact that among the four offense elements necessary to prove Mr. El Hage's section 1001(a)(2) violation, not one involves evidence arising out of this judicial district.[5] We thereby conclude, on the specific facts of this case as they are applicable to Count 308, that 18 U.S.C. § 3237 affords no basis for venue in the Southern District of New York.

## B. *Effects of the Offense Theory*

■ As a secondary argument, the Government relies on *United States v. Reed*, 773 F.2d 477 (2d Cir.1985), for the proposition that the external effect of Mr. El Hage's criminal conduct under Count 308 independently gives rise to venue in a district alternative to the one in which he performed the acts constituting the offense. Even assuming that Mr. El Hage's false statements to the FBI in Texas somehow impacted the investigation in the Southern District of New York,[6] the Court finds no basis for applying *Reed* to the instant case.

Thomas Reed was indicted in the Southern District of New York for, inter alia, perjury[7] and obstruction of justice[8] in connection with deposition testimony given by him in a civil fraud action pending in the same district. However, because Reed's deposition was taken in San Fran-

---

**5.** To satisfy its burden of proof as to any allegation under 18 U.S.C. § 1001(a)(2), the government must prove each of the following four elements beyond a reasonable doubt:

First, on or about the date specified, the defendant made a material statement or representation;

Second, the statement or representation was false, fictitious, or fraudulent;

Third, the false, fictitious, or fraudulent statement was made knowingly and willfully; and

Fourth, the statement or representation was made in a matter within the jurisdiction of the government of the United States. 2 Leonard B. Sand et al., *Modern Federal Jury Instructions* ¶ 36.01, Instr. 36–8.

**6.** The criminal investigation into Usama Bin Laden, Al Qaeda, and the bombings of the U.S. embassies in East Africa was (and presumably still is) based in the Southern District of New York. And in August 1998, the FBI interviewed Mr. El Hage in Texas pursuant to that ongoing investigation.

However, the Government did not introduce at trial—and was never under any obligation to introduce—evidence that its investigation was in any way impeded or otherwise injured by virtue of Mr. El Hage's alleged misrepresentations concerning his relationship with Mohamed Sadeek Odeh. Proof of the crime's effect is not an offense element under 18 U.S.C. § 1001(a)(2). *See supra* note 4.

**7.** 18 U.S.C. § 1623.

**8.** 18 U.S.C. § 1503.

cisco, the trial court dismissed the perjury charge on the ground that "venue for perjury lies only in the district in which the oath was taken," and dismissed the obstruction of justice charge on the ground that "venue lies only in the district in which the acts constituting the obstruction occurred." 773 F.2d at 479.

The Court of Appeals reversed and concluded that "often ... sites other than where the acts occurred [have] equal standing so far as venue is concerned." *Id.* at 481. These alternative venues were to be determined by taking into account three factors other than the locus delicti: "the elements and nature of the crime, the locus of the effect of the criminal conduct, and the suitability of each district for accurate factfinding." *Id.* As such, with respect to perjury offenses, the *Reed* court found that all three factors combined to permit perjury committed in an ancillary proceeding to be prosecuted in the district in which the parent proceeding was pending—irrespective of where the ancillary proceeding transpired. *See id.* at 482–484. And as for obstructions of justice, the Court of Appeals decided that the first two of the three factors above were together sufficient to render venue "proper in the district in which the proceeding sought to be obstructed is pending even though the would-be obstructive acts took place elsewhere." *Id.* at 486.

Contrary to the Government's assertions, there is nothing in *Reed* which says that the effects of a crime *alone* may ever serve as an independent basis for venue

when all other considerations properly point to another judicial district. To begin, the holding in *Reed* did not premise alternative venue on just a single factor in opposition to the locus delicti. The court instead looked, as discussed *supra*, to a combination of at least two or more of the three enumerated factors.

Second, although the *Reed* court opined that "places that suffer the effects of a crime are entitled to consideration for venue purposes," *id.* at 482, all of the supporting cases cited by the court—in addition to the very facts of *Reed*—involve criminal statutes wherein a specific offense element is itself defined in terms of the crime's effect. *See id.* (obstruction of justice: to influence, intimidate, or impede the due administration of justice; and perjury: false material declaration in any proceeding before or ancillary to any court or grand jury); *United States v. Billups*, 692 F.2d 320 (4th Cir.1982) (Taft–Hartley Act: effect on interstate commerce); *United States v. Craig*, 573 F.2d 513 (7th Cir.1978) (Hobbs Act: effect on interstate commerce); *United States v. Martin*, 704 F.2d 515 (11th Cir.1983) (bail-jumping: violation of a court's order to surrender).[9] The elements of 18 U.S.C. § 1001(a)(2), by contrast, do not include any requirement that there be proof of the false statement's effect, if any. Indeed, the standard charge concerning section 1001 explicitly cautions the jury that "it is not necessary for the government to prove that the government agency was, in fact, misled as a result of the defendant's action." 2 Leonard B.

---

9. *United States v. Castillo–Felix*, 539 F.2d 9 (9th Cir.1976), is the only other case cited in *Reed* supposedly related to venue and the effects of a crime. *See Reed*, 773 F.2d at 482. There, however, the Ninth Circuit considered the domestic effects of crimes committed entirely inside Mexico only for purposes of determining subject matter jurisdiction under *United States v. Bowman*, 260 U.S. 94, 43

S.Ct. 39, 67 L.Ed. 149 (1922). The court separately found that the defendant's prosecution in the District of Arizona was permissible under the venue provisions of 18 U.S.C. § 3238 (the statutory language of which is found in note 14 *infra*). *See id.* at 12–13. *Castillo–Felix* did not hold that the transnational effects of the defendant's crimes afforded an independent basis for venue in Arizona.

Sand et al., *Modern Federal Jury Instructions* ¶ 36.01, Instr. 36–2.

Third, a recent venue decision by the Supreme Court runs counter to the Government's proposed interpretation of *Reed.* In *United States v. Cabrales,* 524 U.S. 1, 118 S.Ct. 1772, 141 L.Ed.2d 1 (1998), the defendant was prosecuted in the Western District of Missouri for money laundering.[10] The trial court dismissed the money laundering allegations because Cabrales performed all the illegal transactions while inside Florida. The sole connection to Missouri stemmed from the fact that the laundered money derived from drug activity taking place in Missouri. A unanimous Supreme Court affirmed on the primary ground that "the crimes described in [the dismissed] Counts ... are defined in statutory proscriptions that interdict only the financial transactions (acts located entirely in Florida), not the anterior criminal conduct that yielded the funds allegedly laundered." *Id.* at 7, 118 S.Ct. 1772 (internal citations omitted). Furthermore, the Court rejected the government's contention that "[the government's] convenience, and the interests of the [Missouri] community victimized by drug dealers, merit consideration." *Id.* at 9, 118 S.Ct. 1772. Unless Cabrales was actually charged with criminal activity in Missouri, her prosecution in that venue instead of Florida was improper, regardless of any external factor.[11]

Fourth, the only other court actually to consider the discrete question before us—

that is, whether a crime's effect alone may give rise to venue in a district alternative to the one in which the acts constituting the crime occurred[12]—has held that "[v]enue will also lie where the effects of the defendant's conduct are felt, *but only when Congress has defined the essential conduct elements in terms of those effects.*" *United States v. Bowens,* 224 F.3d 302, 314 (4th Cir.2000) (emphasis added), *cert. denied,* —— U.S. ——, 121 S.Ct. 1408, 149 L.Ed.2d 349 (2001). The Fourth Circuit found its conclusion to be one that logically flowed from *Cabrales. See Bowens,* 224 F.3d at 309–312. Applying the above principle, the Fourth Circuit vacated the defendant's convictions in the Eastern District of Virginia for his acts of harboring a fugitive[13] from Virginia, since such harboring was done only in South Carolina. The Fourth Circuit believed that any effect on Virginia's "due administration of justice" implicated at most only a non-essential offense element of the relevant statute. *Id.* at 313. As such, "the district court erred in considering the effect of Bowens' harboring offense in determining venue." *Id.* at 313–314.

Two Second Circuit opinions issued during the last year echo the concerns underlying *Bowens. See United States v. Kim,* 246 F.3d 186 (2d Cir.2001); *United States v. Saavedra,* 223 F.3d 85 (2d Cir. Aug.17, 2000), *cert. denied sub nom., Rodriguez v. United States,* —— U.S. ——, 121 S.Ct. 1612, 149 L.Ed.2d 476 (2001). These two cases establish the rule that venue

**10.** 18 U.S.C. § 1956(a)(1)(B)(ii) and § 1957.

**11.** At least one other court in this circuit has faced the argument that portions of the *Reed* test for alternative venue "are no longer applicable after the Supreme Court's decision in *Cabrales.*" *United States v. Mittal,* 1999 WL 461293, *4 n. 1 (S.D.N.Y.1999). The trial court in *Mittal* left that question unanswered because it was unnecessary to its holding.

**12.** In a recent case before the Supreme Court, although the effects of the offense theory was raised on appeal, the Court opted to "express no opinion as to whether the Government's assertion is correct." *United States v. Rodriguez–Moreno,* 526 U.S. 275, 279 n. 2, 119 S.Ct. 1239, 143 L.Ed.2d 388 (1999).

**13.** 18 U.S.C. § 1071.

may be proper in a district other than the locus deliciti so long as venue in the alternative district is based on an "element *essential* to the conduct the statute criminalizes." *Kim*, 246 F.3d at 193 (emphasis in original) (quoting *Saavedra*, 223 F.3d at 92). Thus, in both *Kim* and *Saavedra*, the Court of Appeals sustained venue in the Southern District of New York because there existed some essential offense element which required proof arising out of this district. *See Kim*, 246 F.3d at 193 ("[W]e believe that the wire communications to and from Manhattan were essential to the continuing offense of causing fraudulent wires to be transmitted."); *Saavedra*, 223 F.3d at 92 ("The racketeering element in this case is not a mere 'circumstance' of the § 1959 offense—it is an essential element of the crime.").

The foregoing review of the authorities convinces us that *Reed* does not—indeed, could not—stand for the proposition that venue may properly be based where solely the effects of the crime are located. With respect to Mr. El Hage and his alleged false statements under Count 308, the laying of venue in the Southern District of New York is unsupported by the section 3237 venue provision, or the locus deliciti, or any of the four offense elements of 18 U.S.C. § 1001(a)(2). Any consideration of the putative external effects of Mr. El Hage's Texas statements would require the Court to base venue on just one factor and on a factor which is not even an element of the relevant criminal statute.

In sum, we believed that neither the Government's continuing offense theory nor its effects of the offense theory was appropriate, and accordingly we granted Mr. El Hage's motion to dismiss Count 308 of the Indictment.

## II. SECTION 3238 VENUE AS TO THE CONSPIRACY COUNTS [14]

■ In its requests to charge concerning the conspiracy counts of the Indictment, the Government proposed that the jury be instructed that proper venue as to each count could be found on one of either two permissible bases: (1) that at least one of the defendants in each count was first brought to or arrested in the Southern District of New York, *see* 18 U.S.C. § 3238;[15] or (2) that an overt act in furtherance of the conspiracy was committed in this district by one of the alleged co-conspirators, *see United States v. Naranjo*, 14 F.3d 145, 147 (2d Cir.), *cert. denied*, 511 U.S. 1095, 114 S.Ct. 1862, 128 L.Ed.2d 484 (1994). None of the Defendants objected to the Government's request.

Nevertheless, the Court consciously drafted a charge that submitted to the jury only the section 3238 basis for venue as to the conspiracy counts. That draft was then circulated among counsel at oral argument on defendants' various motions for judgments of acquittal on April 12, 2001—at which time we alerted the parties of our intention to depart from the Government's proposed venue charge and that the alteration was reflected in the drafts they had

---

14. All references to "the conspiracy counts" refer to Counts 1 and 3 through 5 of the unredacted Seventh Superseding Indictment. Because the Government voluntarily withdrew Counts 2 and 6 during the pendency of the trial, Counts 1 and 3 through 5 were the only allegations of criminal conspiracy actually submitted to the jury for consideration.

15. 18 U.S.C. § 3238 provides, in relevant part:

Offenses not committed in any district
The trial of all offenses begun or committed upon the high seas, or elsewhere out of the jurisdiction of any particular State or district, shall be in the district in which the offender, or any one of two or more joint offenders, is arrested or is first brought . . . .

just received. (Trial Tr. at 3902.) The first charging conference was subsequently held on April 16. Neither at that time nor during any of the numerous other conferences after April 16 in which our proposed charge was discussed did any party object to the Court's suggested venue instruction, whether in open court or in writing. Thus, as part of the charge that was ultimately delivered to the jury on May 9–10, we submitted section 3238 as the sole basis upon which to determine venue for the conspiracy counts.

We provide herein the considerations which informed our charging decision.[16] First, section 3238 is an appropriate basis for venue so long as the international conspiracy offense in question *began* outside the United States, irrespective of the fact that a few of the alleged overt acts of the conspiracy were later committed inside the United States. *See* 18 U.S.C. § 3238; *United States v. Levy Auto Parts,* 787 F.2d 946, 950–952 (4th Cir.) (finding venue appropriate under § 3238 when conspiracy was "essentially foreign," even when some overt acts occurred inside United States), *cert. denied,* 479 U.S. 828, 107 S.Ct. 108, 93 L.Ed.2d 56 (1986); *United States v. Erwin,* 602 F.2d 1183, 1185 (5th Cir.1979) (per curiam) ("That venue may also be appropriate in another district will not divest venue properly established under § 3238."), *cert. denied,* 444 U.S. 1071, 100 S.Ct. 1014, 62 L.Ed.2d 752 (1980); *United States v. Williams,* 589 F.2d 210, 213 (5th

Cir.1979) ("The venue statutes are not mutually exclusive, and a suggestion that venue is proper under § 3237(a) will not serve to divest venue from another judicial district if venue is proper in that district under § 3238."), *adopted in pertinent part,* 617 F.2d 1063, 1071 (5th Cir.1980) (en banc); 2 Charles Alan Wright, *Federal Practice and Procedure* § 304 (3d ed.2000) ("[§ 3238] is a continuing-offense statute. If an offense is begun or committed ... out of the jurisdiction of any particular state or district, venue is proper in which the offender is arrested or first brought even though parts of the crime were committed in some other district so that venue might have been proper there."); *see also United States v. Jensen,* 93 F.3d 667, 671 (9th Cir.1996) (Fletcher, J., concurring) ("That the defendants also operated their vessels within the District of Alaska does not remove section 3238's applicability—the alleged offense was still 'begun or committed' upon the high seas during the period charged.") (citing 8A James A. Moore et al., *Moore's Federal Practice* ¶ 18.06[3] (2d ed.1995)) (additional citations omitted).[17] Here, the Indictment alleges—and the evidence at trial has convincingly shown—that the conspiracies originated overseas.

Second, there was in our estimation an overriding need to simplify the jury's deliberative task in this incredibly complex prosecution. Among the 175 overt acts

16. Explication may be useful in light of an arguably ambiguous comment by the Court when it alerted the parties to the Court's proposed venue instruction (Trial Tr. at 3942), and an unresolved question of law stated in an earlier opinion in this case (*United States v. Bin Laden,* 91 F.Supp.2d 600, 612–614 (2000)).

17. *United States v. Gilboe,* 684 F.2d 235 (2d Cir.1982), is not to the contrary. Unconsidered dictum in that case seems to suggest that venue under 18 U.S.C. § 3238 is limited to

offenses committed wholly abroad because the title of section 3238 reads "Offenses not committed in any district." Such a myopic reading of section 3238 is directly in conflict with the clear language of the statute. At any rate, the dictum in *Gilboe* was not relevant to any issue before the court, has never been favorably cited or relied upon, and has subsequently been rejected by the overwhelming weight of authority. *See* text accompanying this note.

382

originally alleged in the 308–count Indictment, only four concerned activity occurring in the Southern District of New York—and thus only four overt acts could properly be used by the jury to find venue in this district.[18] But of these four overt acts, three were similarly the subject of twenty-one substantive offense counts against Defendant Wadih El Hage.[19] There thus existed a significant danger of confusion to the jury and prejudice to the defendants. For example: On the one hand, the jury would be told that Mr. El Hage could be found guilty of Count 287 if and only if his perjury to the grand jury was proven beyond a reasonable doubt; on the other hand, the jury would also be told that venue in this district as to the conspiracy counts could be based upon proof, merely by a preponderance of the evidence, that Mr. El Hage committed that same perjury as a member and in furtherance of the charged conspiracies. The obvious risk of unfair mistake and prejudicial spillover—coupled with, to date, the lack of any opposition by the parties—convinced us to take the approach adopted in our final venue charge to the jury.[20]

SO ORDERED.

---

18. These four overt acts related to alleged perjury by Ali Mohamed, and alleged perjury and false statements by Wadih El Hage.

19. Originally, Counts 287 through 305 of the Indictment charged Mr. El Hage with perjury, and Counts 306 to 308 charged him with making false statements.

20. The Court's simplified venue charge was appropriate in yet another respect. Other than the conspiracy counts, there are 279 other counts of the Indictment wherein venue is an independent issue before the jury (i.e., Counts 7 through 286). Those 279 counts provide only one possible basis for venue in the Southern District of New York: 18 U.S.C. § 3238. Therefore, by similarly limiting venue on the conspiracy counts to section 3238, the jury is not unduly burdened by multiple— and redundant—principles of law.