F I L E D
United States Court of Appeals
Tenth Circuit

APR 1 2003

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

TERRENCE DUNNE,

Defendant-Appellee.

No. 01-4147

---

Appeal from the United States District Court
for the District of Utah
(D.C. No. 98-CR-278-ST)

---

Stewart C. Walz, Assistant United States Attorney, (Paul M. Warner, United
States Attorney, Diana Hagen, Assistant United States Attorney, with him on the
brief), Salt Lake City, Utah, for Plaintiff-Appellant.

Donald D. Hackney, Hackney, Hamilton & Carroll, Spokane, Washington, for
Defendant-Appellee.

---

Before **BRISCOE**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**MURPHY**, Circuit Judge.

---

**MURPHY**, Circuit Judge.

---

## I.  INTRODUCTION

The United States appeals from the district court's dismissal of a superseding indictment charging defendant Terrence Dunne ("Dunne") with making a false statement within the jurisdiction of the Securities and Exchange Commission ("SEC"), in violation of 18 U.S.C. § 1001.  The district court dismissed the indictment for failure to charge within the applicable five-year statute of limitations.  This court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms**, concluding that while a violation of 18 U.S.C. § 2(b) is implicit in every charge, the charged offense is barred by the statute of limitations.  Moreover, this court concludes that a violation of 18 U.S.C. § 1001 is not a continuing violation for statute of limitations purposes.

## II.  BACKGROUND

Dunne was engaged by PanWorld Minerals International, Inc. ("PanWorld") to perform PanWorld's financial audit for the calendar year 1993.  On April 11, 1994, Dunne completed the audit of PanWorld, signed the audit report, and mailed the audited financial statements and the audit report to PanWorld.  PanWorld mailed a Form 10-K Report, which included the audit report and audited financial statements, to the SEC on April 29, 1994.  The SEC received the Form 10-K Report on May 4, 1994.

On April 28, 1999, a Utah federal grand jury returned a superseding, five-count indictment against Robert Weeks ("Weeks"), the president and principal executive officer of PanWorld; David Hesterman ("Hesterman"), a PanWorld consultant; and Dunne arising out of their activities in connection with PanWorld. Counts I through III of the indictment involved only Weeks and Hesterman and are not relevant to this appeal. Count IV of the indictment charged Weeks and Hesterman with violations of the Securities Exchange Act by falsely stating in PanWorld's 1993 Annual Report filed with the SEC that the company had acquired an interest in a project in Montana known as Washington Gulch Placer Project.

Count V, the only count naming Dunne, began by "realleg[ing] and incorporat[ing]" relevant factual allegations of Counts I, III, and IV. Count V further alleged that

> 3. Defendant TERRENCE DUNNE audited the financial statements included in PanWorld's 1993 annual report. DUNNE signed an audit opinion for the 1993 financial statements stating his audit of PanWorld was done in accordance with generally accepted auditing standards (GAAS) and the financial statements were presented in accordance with generally accepted accounting principles (GAAP). However, DUNNE knew from the terms of the October 31, 1993 contract that PanWorld acquired no interest in Washington Gulch, and therefore, knew that the financial statements were not presented in accordance with GAAP. DUNNE took no steps to satisfy the requirements of generally accepted auditing standards to determine if the Washington Gulch interest was properly included in the PanWorld financial statements, and the defendant DUNNE did not acquire competent evidential matter as required by GAAS that

-3-

showed the acquisition of the Washington Gulch interest by PanWorld on October 31, 1993.

4. On or about May 4, 1994, in the Central Division of the District of Utah, and elsewhere, TERRENCE DUNNE, in a matter within the jurisdiction of the SEC, an independent agency of the Executive Branch of the United States, did make a materially false, fictitious, and fraudulent statement and representation in that the defendant TERRENCE DUNNE did certify that the financial statements for [PanWorld] for the year ending December 31, 1993 were presented in accordance with generally accepted accounting principles (GAAP), and audited in accordance with Generally Accepted Auditing Standards (GAAS), when, as the defendant then and there well knew, such was not the case; all in violation of 18 U.S.C. § 1001.

Dunne moved to dismiss Count V of the superseding indictment on the grounds that it was barred under the five-year statute of limitations. 18 U.S.C. § 3282 (establishing a five-year statute of limitations for noncapital offenses). Dunne argued that the statute of limitations began to run when he mailed the audit report to PanWorld on April 11, 1994 and thus expired before the April 28, 1999 indictment was filed. The government opposed Dunne's motion, arguing that the superseding indictment was timely because: (1) the charged crime was not complete until the documents containing the false statements were actually submitted to the SEC on April 29, 1994; and (2) the crime charged in the indictment was the "republication" of the financial statements by PanWorld when it submitted them to the SEC.

The district court referred the case to a magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B). In recommending that Dunne's motion be denied, the

-4-

magistrate judge agreed with the government that the charged crime was not complete until the false statement was sent by PanWorld to the SEC. Focusing on the elements of the charged offense, the magistrate judge noted there were two elements relating to the time when the offense was committed. The magistrate judge concluded that the first element, *i.e.*, the making of a false statement, occurred on April 11, 1994 when Dunne submitted the audit report and the audited financial statements to PanWorld. As for the second temporal element, *i.e.*, that the false statement concern a matter within the jurisdiction of an agency of the United States, the magistrate judge concluded that this occurred on April 29, 1994 when PanWorld mailed the Form 10-K Report, including Dunne's false statements, to the SEC. The magistrate judge concluded that because the superseding indictment was returned on April 29, 1999, it was timely under 18 U.S.C. § 3282.

Dunne objected to the magistrate judge's report and recommendation, arguing that the SEC had jurisdiction over him when he signed and mailed the audit report to PanWorld on April 11, 1994. Dunne also argued that when he was engaged in March 1994 by PanWorld to perform the audit, the SEC obtained jurisdiction over him.

The government responded to Dunne's objections, arguing that the charged crime was not completed upon Dunne's signing and mailing the audit reports to

PanWorld because, without submission to the SEC, there is no potential the false statements could impede a governmental function. Further, the government argued, merely because an agency may have jurisdiction over an individual who appears before it, statements made by that individual do not automatically concern matters within the jurisdiction of the agency for purposes of 18 U.S.C. § 1001.

In considering Dunne's objections, the district court concluded the controlling question was at what point in time did Dunne's audit report and audited financial statements "concern a matter within the jurisdiction of a federal department or agency" under § 1001. The district court rejected the government's assertion that the false statements were not brought within the SEC's jurisdiction until PanWorld mailed the statements to the SEC because the government's argument ran counter to the principle that false statements need not be submitted to the government agency before § 1001 is violated. The district court also disagreed with the government's assertion that Dunne submitted his audit report to PanWorld pursuant only to a private contract. Relying on the Securities Exchange Act and its implementing regulations, the district court concluded

> that where, as here, a corporate entity retains the services of an independent certified public accountant, as required by federal law, for the preparation of financial statements required to be submitted to the SEC, which financial statements require the certification of the accountant, and the form, matter, and substance of which statements is dictated by federal law and regulation, and the accountant prepares such materials with the knowledge of the nature of the relationship and does so with the belief that his or her work will ultimately be

-6-

forwarded to the SEC, the accountant's financial statements "concern[] a matter with the jurisdiction of a federal department or agency" when the statements are transmitted to the corporate entity.

The district court further rejected the government's argument that Dunne's § 1001 offense was committed when PanWorld submitted the Form 10-K because it would result in the final element of the crime being committed by PanWorld. The district court acknowledged that when a defendant is charged with aiding and abetting, "the final commission of the 'aiding and abetting' crime may lie with a third party," but noted that, "for whatever reason, Dunne was not charged with aiding and abetting and the government's argument looking to PanWorld's conduct for a determination of when Dunne committed a substantive crime has no application under aiding and abetting principles." Based upon these conclusions, the district court determined that the conduct criminalized by § 1001 was completed when Dunne mailed the false audit report and audited financial statements to PanWorld. The district court, therefore, granted Dunne's motion to dismiss Count V of the superseding indictment on the grounds that the five-year statute of limitations had expired.

On appeal, the government has abandoned its primary argument asserted before the district court, *i.e.*, that the crime charged in Count V of the superseding indictment was not complete until the false statements were actually submitted to the SEC. Instead, the government offers two alternative reasons why Count V of

the superseding indictment was timely. First, the government contends that Count V implicitly alleged that Dunne caused PanWorld to submit the false audit report to the SEC, thereby making him criminally liable under the federal aiding and abetting statute, 18 U.S.C. § 2(b). The government then argues that because PanWorld submitted the false audit report to the SEC within the statute of limitations period, the statute of limitations had not expired on the implicitly charged offense.[1] Second, the government contends that the making of a false statement under 18 U.S.C. § 1001 should be treated as a continuing offense and, thus, the statute of limitations did not begin to run until the time the Form 10-K Report was forwarded by PanWorld to the SEC.

## III. DISCUSSION

### A. Application of 18 U.S.C. § 2(b)

The government argues that the district court erred in concluding that it was required to *expressly* charge Dunne under 18 U.S.C. § 2(b) with causing PanWorld to make a false statement to the SEC when it submitted the Form 10-K Report. The government then argues that the implicit 18 U.S.C. § 2(b) charge

---

[1] The government has failed to include in the record on appeal a copy of the pleading in which this argument was first presented to the district court. However, because the government raised this argument before the district court at the hearing on Dunne's motion to dismiss the superseding indictment and the district court expressly ruled on the government's argument, the government has not waived this argument on appeal.

was not barred by the five-year period of limitations. We review the government's arguments *de novo*. *See United States v. Giles*, 213 F.3d 1247, 1248-49 (10th Cir. 2000) (holding that issues concerning the sufficiency of an indictment are reviewed *de novo*).

The aiding and abetting statute, 18 U.S.C. § 2, provides:

(a)    Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b)    Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

This statute does not create an independent or separate crime, but rather simply "abolishes the common-law distinction between principal and accessory." *United States v. Cook*, 745 F.2d 1311, 1315 (10th Cir. 1984). Consistent with this principle, "[w]e have held that [a] defendant can be convicted as an aider and abettor even though he was indicted as a principal for commission of the underlying offense and not as an aider and abettor." *United States v. Scroger*, 98 F.3d 1256, 1262 (10th Cir. 1996) (quotation omitted); *see Cook*, 745 F.2d at 1315 (holding that "an individual may be indicted as a principal for commission of a substantive crime and he/she may be convicted by proof showing him/her to be an aider and abettor"). Consequently, the government need not expressly charge that a defendant's actions fall within the ambit of § 2(b) to convict the defendant under that statute. *See Evans v. United States*, 240 F.2d 695, 695-96 (10th Cir.

1957) (reasoning that, although the indictment did not expressly charge the defendant with causing the transport of the stolen automobile, "the Government must prove that the defendant transported or caused the automobile to be transported in interstate commerce" to sustain a conviction (footnote omitted)). Other circuits have similarly held or stated that the government may convict upon a § 2(b) theory even though it was not alleged in the indictment. *See, e.g., United States v. Howick*, 263 F.3d 1056, 1064 (9th Cir. 2001) (holding the failure of an indictment to expressly charge "causing" "does not foreclose a subsequent conviction on a causation theory"); *United States v. Dodd*, 43 F.3d 759, 762 n.5 (1st Cir. 1995) (stating "an aider and abettor charge [referring to subsections 2(a) and 2(b)] is implicit in all indictments . . . so it need not be specifically pleaded" (quotation omitted) (alteration in original)); *United States v. Perry*, 643 F.2d 38, 45 (2d Cir. 1981) (stating "the provisions of 18 U.S.C. § 2 can be read into an indictment which specifically charges only a substantive offense"); *United States v. Lester*, 363 F.2d 68, 72 (6th Cir. 1966) (holding "an indictment need not specifically charge . . . 'causing' . . . in order to support a jury verdict"). Therefore, the district court erred in concluding that the government was required to expressly charge Dunne with "causing" the false statement to be made to the SEC to sustain a conviction under 18 U.S.C. § 2(b).

While the government need not expressly charge a defendant under § 2(b), it must expressly charge the defendant with the underlying substantive offense. *See United States v. Willis*, 102 F.3d 1078, 1081 (10th Cir. 1996) (noting that to be sufficient, an indictment must "contain[] the elements of the offense charged, provide[] the defendant with fair notice of what he must defend against, and afford[] protection from double jeopardy"). The government argues that the underlying substantive offense is the making of a false statement under 18 U.S.C. § 1001 by submitting the audit report and financial statement to the SEC. To support its interpretation, the government notes the superseding indictment alleged that the charged conduct occurred on May 4, 1994, the date the false documents were received by the SEC. The superseding indictment, however, only charged Dunne with the making of a false statement under 18 U.S.C. § 1001 by *certifying* the audit report and financial statements. The references to May 4, 1994 and to the SEC in the superseding indictment are merely jurisdictional and are not allegations pertinent to the charged substantive crime. The indictment may only be read to also implicitly charge Dunne with either aiding and abetting in or causing someone else to commit the charged crime, *i.e.*, the certification of the false documents.[2] Accordingly, the government's argument that the statute of

---

[2] The government's brief on appeal supports the conclusion that the submission of the false statements to the SEC and the certification of the false statements are two separate crimes. Aplt. Br. p. 16 n.6 (stating "Dunne may have

-11-

limitations did not expire because Count V implicitly alleged that Dunne caused PanWorld to *submit* the false statements to the SEC is unavailing.

## B. Continuing Offense Doctrine

The government also argues that the making of a false statement under 18 U.S.C. § 1001 should be treated as a continuing offense and the statute of limitations should not begin running before the statement has the potential to deceive and the government could reasonably discover the crime. Therefore, the government argues the statute of limitations did not begin to run until the audit report certified by Dunne was submitted to the SEC. Because the government did not raise this argument in the district court, it is reviewed on appeal for plain error. *Cf. United States v. Ivy*, 83 F.3d 1266, 1297 (10th Cir. 1996) (holding that if the government fails to object to the presentence report, the district court's reliance on the report is reviewed for plain error).

"'Continuing offense' is a term of art that does not depend on everyday notions or ordinary meaning." *United States v. Jaynes*, 75 F.3d 1493, 1506 (10th Cir. 1996) (quotations omitted). It "is not the same as a scheme or pattern of illegal conduct." *Id*. Rather, it "is, in general, [an offense] that involves a

---

directly violated Section 1001 when he signed the audit report on April 11, 1994, and then caused a second violation of Section 1001 to occur on or about May 4, 1994, by delivering a false audit report to PanWorld with the understanding that it would be provided to the SEC").

prolonged course of conduct," and "its commission is not complete until the conduct has run its course." *United States v. Rivera-Ventura*, 72 F.3d 277, 281 (2d Cir. 1995); *see also United States v. De La Mata*, 266 F.3d 1275, 1288 (11th Cir. 2001) (holding that "[a] continuing offense is one which is not complete upon the first act, but instead continues to be perpetrated over time"), *cert. denied*, 122 S. Ct. 1543 (2002).

In *Toussie v. United States*, the Supreme Court discussed the continuing offense doctrine and outlined when an offense should be considered "continuing" for statute of limitations purposes. 397 U.S. 112, 114-115 (1970). Because "questions of limitations are fundamentally matters of legislative . . . decision," and because there is "tension between the purpose of a statute of limitations and the continuing offense doctrine," the Court held that "the doctrine . . . should be applied in only limited circumstances." *Id.* at 121, 115 (quotation omitted). More specifically, the Court held that an offense should be considered a continuing one for statute of limitations purposes only if (1) "the explicit language of the substantive criminal statute compels such a conclusion," or (2) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id*. at 115.

The first of these possibilities is clearly inapplicable here. Nothing in the explicit language of § 1001 "compels" the conclusion that an offense committed

thereunder is to be considered a continuing one. If Congress had intended that to be the case, it could have clearly stated so. *See e.g.*, 18 U.S.C. § 3284 ("The concealment of assets of a debtor" in a Chapter 11 case "shall be deemed to be a continuing offense" until the date of final bankruptcy discharge).

Nor does the nature of the crime involved indicate that Congress intended that it be a continuing offense. Section 1001 was intended "to protect the Government from the affirmative, aggressive and voluntary actions of persons who take the initiative; and to protect the Government from being the victim of some positive statement which has the tendency and effect of perverting normal and proper governmental activities and functions." *Brogan v. United States*, 522 U.S. 398, 413 (1998) (Ginsburg, J., concurring) (quotation omitted); *see United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991) (holding that, in determining whether a crime is a continuing offense, the court must focus on "the nature of the substantive offense, [and] not on the specific characteristics of the conduct in the case at issue"). Consistent with this purpose, § 1001 makes it illegal for a person

> in any matter within the jurisdiction of any department or agency of
> the United States [to] knowingly and willfully falsif[y], conceal[] or
> cover[] up by any trick, scheme, or device a material fact, or make[]
> any false, fictitious or fraudulent statements or representations, or
> make[] or use[] any false writing or document knowing the same to
> contain any false, fictitious or fraudulent statement or entry . . . .

18 U.S.C. § 1001 (1994).[3]

None of these criminalized acts, however, "clearly contemplate[] a prolonged course of conduct." *Toussie*, 397 U.S. at 120. Rather, the statute contemplates a single act even though there may be continuing effects. The government appears to be arguing that Dunne committed a crime which had continuing effects after its completion. Such consequences, however, are not alone sufficient to warrant classifying violations of § 1001 as continuing offenses. *See United States v. Bustamante*, 45 F.3d 933, 942 (5th Cir. 1995) (holding that because the defendant was "not accused of committing a crime that has continuing effects after its completion," but rather "was charged with accepting illegal gratuities over an extended period of time," he was "therefore charged with continuing criminal behavior").

The government suggests that Congress did not intend the statute of limitations to run before the offense could reasonably have been discovered. The ability of the government, however, to learn of a particular offense is not a relevant factor under the *Toussie* analysis. The crime at issue in *Toussie*, failing to register for the draft, was arguably more difficult for the government to detect than the crime at issue here.

---

[3] This provision was amended in 1996 after the completion of the alleged crime.

A few courts, however, have explicitly or implicitly described § 1001 as a continuing offense statute for purposes of 18 U.S.C. § 3237(a), which establishes venue in any district in which an offense was "begun, continued or completed." *United States v. Candella*, 487 F.2d 1223, 1227-28 (2d Cir. 1973) (concluding that venue for a § 1001 violation existed in the district where the falsified documents were delivered to public officials and in the district it was contemplated that the documents would eventually be transferred); *United States v. Bin Laden*, 146 F. Supp. 2d 373, 376 (S.D.N.Y. 2001) (discussing cases in which a court concluded the § 1001 violation to be continuing for § 3237(a) purposes and noting that in each "the shared factual characteristic [wa]s . . . a geographic discontinuity between the defendant's physical *making* of the disputed statement, whether oral or written, and the actual *receipt* of that statement by the relevant federal authority"); *United States v. Kouzmine*, 921 F. Supp. 1131, 1136 (S.D.N.Y. 1996) (concluding that "[v]iolations of Section 1001 are continuing offenses for which venue is proper in any district in which the offense began, continued, or was completed"). Although issues of venue are obviously different from issues involving statutes of limitations, the two concepts are clearly related. *See United States v. Hernandez*, 189 F.3d 785, 790 (9th Cir. 1999) (noting that "the act that triggers *when* a [statutory] violation is committed[,] . . . also provide[s] a limit on *where* venue may lie," since "[n]either the Constitution nor

[the criminal statute at issue] permits venue in a location in which the defendant happens to be after the crime was completed, unless the defendant began, continued or completed his crime in that venue"). Thus, these cases cannot be entirely ignored.

Nevertheless, we note that none of the cases involving issues of venue cited by the government applied the *Toussie* analysis in determining whether § 1001 offenses should be deemed continuing offenses. Instead, the cases focused almost exclusively on geographic factors, *i.e.*, where the false statement was made and where it was received by the federal government. When the cases are closely examined, it is questionable whether they are defining § 1001 as a "continuing offense" crime as that term is defined in *Toussie*. Rather, when addressing venue, these cases use the phrase "continuing offense" to anticipate that § 1001 offenses can begin, continue, and be completed in more than one geographic location, and not that § 1001 offenses typically continue over a prolonged period of time. When viewed in this manner, these cases can be reconciled with the conclusion that § 1001 offenses are not continuing offenses for statute of limitations purposes. While § 1001 offenses do not typically involve a prolonged course of conduct, and thus do not fall within the continuing offense doctrine, they can begin, continue, and end in different geographic locations, depending largely on when and where the relevant federal agency assumes jurisdiction over the false

statement at issue. For these reasons, we conclude that § 1001 offenses, such as the one that Dunne was charged with committing, should not be deemed continuing offenses for statute of limitations purposes. Therefore, the district court's conclusion that the statute of limitations had expired on the superseding indictment was not plain error.

## IV. CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED**.