# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50415

United States Court of Appeals
Fifth Circuit

**FILED**

June 5, 2015

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

VICTOR TAVAREZ-LEVARIO,

Defendant-Appellant

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, DENNIS, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

This case presents a question of first impression for this court and our sister circuits: whether "use" of an immigration document, "knowing it to be forged, counterfeited, altered, or falsely made" or "procured by fraud or unlawfully obtained," constitutes a "continuing offense" for statute of limitations purposes. 18 U.S.C. § 1546(a). We conclude that it is not. As a result, the indictment in this case was filed outside the applicable five-year limitations period. We therefore REVERSE the conviction of defendant Victor Tavarez-Levario and REMAND for dismissal of the indictment.

## I. Background

On March 26, 2013, Victor Tavarez-Levario ("Tavarez"), a citizen of the Republic of Mexico, was indicted by a federal grand jury for having knowingly

used, possessed, obtained, accepted, and received a counterfeit I-551 ("green card") and counterfeit Social Security card in violation of 18 U.S.C. § 1546(a). At rearraignment, the Government presented the following factual basis. On March 20, 2014, officers pulled over a commercial vehicle driven by Tavarez. Tavarez presented a Mexican driver's license and, upon questioning, admitted that he did not have any documents authorizing him to be in the United States legally. Immigration authorities contacted the owner of the vehicle, Garland Pumping and Roustabout, which revealed that Tavarez had presented a counterfeit green card and counterfeit social security card to obtain employment on February 2, 2009.

The Government conceded that, given the factual basis, the offense was one for "use" of counterfeit documents under § 1546(a). The Government also alerted the court to a statute of limitations issue. If the offense was understood to have been committed on February 2, 2009, the indictment was not timely filed within the five-year limitations period. However, the Government posited that "use" of a counterfeit document was a continuing offense such that the statute of limitations did not begin to run until Tavarez was no longer employed based on the documents.[1] Tavarez admitted to the Government's factual basis; however, he argued that the indictment was not timely because he did not commit a continuing offense. With the consent of the Government, Tavarez entered a conditional plea of guilty in which he reserved the right to appeal the statute-of-limitations issue. *See* FED. R. CRIM. P. 11(a)(2) (allowing a defendant to enter a conditional plea of guilty with the consent of the court and government).

---

[1] The Government conceded that it did not have any proof that Tavarez was in possession of the counterfeit documents when he was stopped in March 2014 or that he possessed the documents at any time within the prior five years.

No. 14-50415

The district court overruled Tavarez's limitations argument and accepted his conditional guilty plea. The district court sentenced Tavarez to a two-year term of probation. Tavarez timely appealed.

## II. Discussion

The only issue before us is whether or not "use" of a counterfeit immigration document under § 1546(a) is a continuing offense. As this is a purely legal question, we review it de novo. *See United States v. Gunera*, 479 F.3d 373, 376 (5th Cir. 2007).

The offense for which Tavarez was convicted does not include a specific statutory limitations period. *See* 18 U.S.C. § 1546. It is thus subject to the general five-year limitations period. *See* 18 U.S.C. § 3282(a). The factual basis for Tavarez's plea demonstrates that, at the time he presented a counterfeit green card and counterfeit Social Security card to obtain employment with Garland Pumping and Roustabout on February 2, 2009, he committed an offense proscribed by § 1546(a), as all elements of the offense were satisfied. *See* § 1546(a) ("Whoever . . . uses . . . any . . . visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made . . . [s]hall be fined under this title or imprisoned . . . .").[2] However, the indictment against Tavarez was not returned within five years of February 2, 2009. The Government argues, and the district court agreed, that the indictment was nonetheless timely because use of a counterfeit immigration document is a continuing offense: when an individual obtains employment based on the presentation of a counterfeit immigration document, the

___

[2] For the sake of brevity, we refer generally to the documents described in § 1546(a) as "counterfeit or fraudulently obtained immigration documents," although we realize that the description in the statute is more nuanced. We specifically note that we are not faced with, nor do we address, the issue of what documents implicate § 1546(a).

Government contends that commission of the crime continues during the tenure of the individual's resulting employment.

"[S]tatutes of limitations normally begin to run when the crime is complete." *Toussie v. United States*, 397 U.S. 112, 115 (1970) (quoting *Pendergast v. United States*, 317 U.S. 412, 418 (1943)) (internal quotation marks omitted), *superseded by statute*, Act of Sept. 28, 1971, Pub. L. No. 92-129, § 101(a)(31), 85 Stat. 348, 352–53 (codified as amended at 50 U.S.C. app. § 462(d)).     However, the "doctrine of continuing offenses" presents a qualification to the general operation of this principle. *Toussie*, 397 U.S. at 115.     "The Supreme Court has defined 'continuing offense' to include 'a continuous, unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may occupy.'" *United States v. Brazell*, 489 F.3d 666, 668 (5th Cir. 2007) (quoting *United States v. Midstate Horticultural Co.*, 306 U.S. 161, 166 (1939)).     "The hallmark of the continuing offense is that it perdures beyond the initial illegal act, and that each day brings a renewed threat of the evil Congress sought to prevent even after the elements necessary to establish the crime have occurred." *United States v. Yashar*, 166 F.3d 873, 875 (7th Cir. 1999) (citation and internal quotation marks omitted).     Consequently, for a continuing offense, the statute of limitations does not begin to run when all elements of the crime are first satisfied, but rather when the ongoing commission of the crime comes to an end. *E.g.*, *United States v. Edelkind*, 525 F.3d 388, 393–98 (5th Cir. 2008).

When deciding whether a crime is a continuing offense for limitations purposes, it is useful to first consider the role of a statute of limitations:

> The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.     Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of

time and to minimize the danger of official punishment because of acts in the far-distant past.  Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity.

*Toussie*, 397 U.S. at 114–15.

In light of the important role played by statutes of limitations, the Supreme Court has stated that "*the doctrine of continuing offenses should be applied in only limited circumstances* since . . . the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." *Id.* at 115 (emphasis added) (citation and internal quotation marks omitted).[3] The Court has thus held that a crime is not to be construed as a continuing offense unless (1) "the explicit language of the substantive criminal statute compels such a conclusion," or (2) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.*[4]  Because we conclude that the statutory offense at issue in the present case meets neither requirement as delineated by the Supreme Court, we hold that it is not a continuing offense.

*A.  The Explicit Language of the Statute*

The explicit statutory language does not compel a conclusion that use of a counterfeit or fraudulently obtained immigration document is a continuing offense.  In other instances, Congress has explicitly stated that a crime is a continuing offense.  *E.g.,* 18 U.S.C. § 3284 ("The concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense . . . .");

---

[3] Indeed, the statute of limitations applicable in this case provides that it applies "[e]xcept as otherwise expressly provided by law."  § 3282(a); *see Toussie*, 397 U.S. at 115 (quoting § 3282(a)).

[4]  *Cf.* MODEL PENAL CODE § 1.06(4) ("An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated.").

22 U.S.C. § 618(e) ("Failure to file any such registration statement or supplements thereto . . . shall be considered a continuing offense for as long as such failure exists . . . ."); 50 U.S.C. app. § 462(d) (superseding *Toussie*, 397 U.S. 112, by effectively providing that the start of the five-year limitations period on the offense of failing to register for the draft does not begin until the day an individual turns twenty-six or registers for the draft).  If Congress intended for use of a counterfeit or fraudulently obtained immigration document under § 1546(a) to constitute a continuing offense, it easily could have stated so.  *See Toussie*, 397 U.S. at 120 (noting that congressional silence on whether a crime is a continuing offense supports the conclusion that it is not).  In addition, unlike other statutes that have been held to proscribe a continuing offense, § 1546(a) does not include language which would indicate that the offense involves ongoing conduct.  *See Toussie*, 397 U.S. at 120 ("Unlike other instances in which this Court has held that a particular statute describes a continuing offense, there is no language in this Act that clearly contemplates a prolonged course of conduct."); *see, e.g.*, *United States v. Cores*, 356 U.S. 405, 408–09 (1958) (holding that punishment of "any alien crewman who willfully remains in the United States in excess of the number of days allowed" is a continuing offense).

Citing the principle that each term in a statute should be given effect, *see TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001), the Government argues  that the term "use" must be construed as involving an ongoing employment of the counterfeit or fraudulently obtained document so that the term "utter" in § 1546 does not render it superfluous.  We disagree.  In other contexts, "the word 'use' [has posed] some interpretational difficulties because of the different meanings attributable to it." *Bailey v. United States*, 516 U.S. 137, 143 (1995), *superseded by statute*, Act of Nov. 13, 1998, Pub. L. No. 105-386, § 1(a)(1), 112 Stat. 3469 (codified at 18 U.S.C. § 924(c)(1)(A)).  Accordingly, the word "draws

No. 14-50415

meaning from its context" and it is important to consider the statutory scheme in which it is found. *Id.* (interpreting "uses or carries a firearm"). We think it clear that the verb "use," in the context of § 1546's prohibitions relating to counterfeit or fraudulently obtained immigration documents, means "[t]o employ for the accomplishment of a purpose." BLACK'S LAW DICTIONARY 1776 (10th ed. 2014); *see* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1301 (10th ed. 1994) ("use implies availing oneself of something as a means or instrument to an end"); *Bailey*, 516 U.S. at 145 (noting that the "ordinary or natural meaning" of the word "use" includes "to convert to one's service, to employ, to avail oneself of, and to carry out a purpose or action by means of" (citation and internal quotation marks omitted)). Use implies "action and implementation," *Bailey*, 516 U.S. at 145, especially in the context of § 1546(a), which separately proscribes "possessing" a counterfeit or fraudulently obtained immigration document, *see id.* at 143.

Within the context of § 1546, the word "utter" carries a different meaning: "[t]o put or send (a document) into circulation." BLACK'S LAW DICTIONARY 1781 (10th ed. 2014). This meaning is specifically employed in reference to the circulation of forged or counterfeit documents as if they were genuine, *id.*—the precise context contemplated by § 1546(a), which prohibits both the production of counterfeit documents and subsequent acts involving counterfeit documents. *See also id.* at 1781 (defining "uttering" as "[t]he crime of presenting a false or worthless instrument with the intent to harm or defraud.—Also termed *uttering a forged instrument*"); MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1302 (10th ed. 1994) ("to circulate (as a counterfeit note) as if legal or genuine").[5]

---

[5] *Cf.* 18 U.S.C. § 479 ("Whoever, within the United States, knowingly and with intent to defraud, *utters*, passes, or puts off, in payment or negotiation, any false, forged, or counterfeited bond, certificate, obligation, security, treasury note, bill, or promise to pay . . . [commits an offense]." (emphasis added)).

7

No. 14-50415

Given this understanding of the terms "use" and "utter," it becomes evident that an individual can utter, or put into circulation, a counterfeit or fraudulently obtained immigration document without himself using or employing the document. This would occur if a person tendered a counterfeit immigration document intended for use by another. Likewise, an individual can use a counterfeit or fraudulently obtained immigration document without himself uttering, or putting into circulation, the document. The two terms thus have distinct meanings within § 1546 without any need to construe the term "use" as involving ongoing action as the Government suggests. Accordingly, we hold that the "explicit language" of § 1546 does not compel the conclusion that using a counterfeit or fraudulently obtained immigration document is a continuing offense. *Toussie*, 397 U.S. at 115.

## B. The Nature of the Crime Involved

The defining characteristic of a continuing offense is that it involves ongoing perpetration, which produces an ongoing threat of harm. *See Brazell*, 489 F.3d at 668; *Yashar*, 166 F.3d at 875. The prototypical continuing offense is conspiracy, which "continues as long as the conspirators engage in overt acts in furtherance of their plot," and "each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Toussie*, 397 U.S. at 122. Likewise, other offenses that prohibit an individual from *remaining* in an unlawful condition or status have been construed to continue so long as the offender maintains the unlawful condition or status; the perpetration of the offense naturally continues so long as the unlawful condition is maintained. *See, e.g.*, *United States v. Bailey*, 444 U.S. 394, 413 (1980) (holding that escape is a continuing offense because the escapee can be held liable for failure to return to custody and "[g]iven the continuing threat to society posed by an escaped prisoner, 'the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one'" (quoting

8

*Toussie*, 397 U.S. at 115)); *Cores*, 356 U.S. at 408–09 (holding that punishment of "any alien crewman who willfully remains in the United States in excess of the number of days allowed" is a continuing offense because the crewman continues to violate the statute "until he physically leaves the United States"); *United States v. Santana-Castellano*, 74 F.3d 593, 598 (5th Cir. 1996) ("Where a deported alien enters the United States and remains here with the knowledge that his entry is illegal, his remaining here until he is 'found' is a continuing offense . . . ."); *United States v. Gray*, 876 F.2d 1411, 1419 (9th Cir. 1989) (holding that failure to appear for sentencing is a continuing offense because a convicted criminal has a continuing obligation to face sentencing and presents an ongoing threat to the integrity and authority of the court so long as he has not appeared); *United States v. Garcia*, 854 F.2d 340, 343–44 (9th Cir. 1988) (holding that kidnapping is a continuing offense because the crime, by its nature, involves unlawful seizure *and detention* and the perpetration of the offense and harm to the victim continues throughout the duration of the detention).

Unlike other crimes that have been construed as continuing offenses, use of a counterfeit or fraudulently obtained immigration document does not by its nature involve ongoing perpetration that produces an ongoing threat of harm. There is nothing about the "use" of an immigration document that denotes temporal longevity. As explained above, a person uses a counterfeit or fraudulently obtained immigration document when he employs the document for a purpose. This may take the form of employing the counterfeit or fraudulently obtained document to obtain employment, gain entry into the country, or obtain other rights and privileges that normally proceed from the employment of a valid immigration document. *Cf. Browder v. United States*, 312 U.S. 335, 335 (1941) (holding that "use by an American citizen of a passport obtained by false statements to facilitate reentry into the United States is a

'use' within § 2 of the Passport Title of the Act of June 15, 1917, [40 Stat. 217, 227]"). Any of these uses of a counterfeit or fraudulently obtained immigration document naturally occur in incidents of finite duration; they do not by nature involve "a continuous, unlawful act or series of acts." *Brazell*, 489 F.3d at 668 (citation and internal quotation marks omitted); *see United States v. Dunne*, 324 F.3d 1158, 1165 (10th Cir. 2003) (holding that a statute which made it illegal for a person to knowingly "use[] any false writing or document" did not involve a continuing offense because it "contemplate[d] a single act" (quoting 18 U.S.C. § 1001)). For example, using a fraudulent document to obtain entry into the country occurs as a discrete incident, as might the attainment of employment or other benefits. This is in stark contrast to traditional continuing offenses, such as conspiracy, that by their essence prohibit conduct that perdures. *Cf. Toussie*, 397 U.S. at 122 (contrasting the ongoing nature of conspiracy and the instantaneous event of registering for the draft).

The Government argues, however, that Tavarez committed a continuing offense because the facts demonstrate that he presented counterfeit documents to his employer, which then set in motion a process by which the documents continually allowed Tavarez to maintain his employment and provided Tavarez with the ongoing benefits of employment. This argument suffers from two flaws.

First, under *Toussie*, the analysis of whether a crime constitutes a continuing offense involves examining the offense itself, not the defendant's particular conduct. *See Toussie*, 397 U.S. at 115. Second, the fact that a particular defendant's conduct provided long-term benefits to that defendant does not mean that his offense is a continuing one. *See Dunne*, 324 F.3d at 1165 (an offense was not a continuing one simple because the defendant "committed a crime which had continuing effects after its completion"); *United States v. Hare*, 618 F.2d 1085, 1086–87 (4th Cir. 1980) (rejecting the argument

that improper receipt of anything of value for performance of an official act was a continuing offense where the defendant received a loan that provided benefits over a prolonged period). Instead, the nature of the offense itself must be such that it inherently involves criminal activity of an ongoing or continuous character. *See Toussie*, 397 U.S. at 115, 122. Even a crime that naturally occurs in a single, finite incident can produce prolonged benefits to an offender; this does not mean that the statute of limitations refrains from running until all benefits of the criminal act dissipate. *E.g.*, *Dunne*, 324 F.3d at 1165; *United States v. Payne*, 978 F.2d 1177, 1180–81 (10th Cir. 1992); *Hare*, 618 F.2d at 1086–87. Thus, we conclude that the "nature" of this offense is not "such that Congress must assuredly have intended that it be treated as a continuing one." *Toussie*, 397 U.S. at 115.[6]

As the indictment against Tavarez was not filed within five years of the commission of the offense, the indictment should have been dismissed. *See* § 3282(a). Accordingly we REVERSE the conviction and REMAND with instructions to dismiss the indictment.

---

[6] We need not resort to considering the rule of lenity because we conclude that § 1546(a) is not ambiguous as to whether "use" of a counterfeit or fraudulently obtained immigration document is a continuing offense. *See Muscarello v. United States*, 524 U.S. 125, 138 (1998). However, assuming arguendo that § 1546(a) is ambiguous, the rule of lenity supports our holding. *See Toussie*, 397 U.S. at 122 ("[W]hen choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication." (citation and internal quotation marks omitted)).

11