IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 111,447

STATE OF KANSAS,
*Appellee*,

v.

VICTOR VALDIVIEZO-MARTINEZ,
*Appellant*.

SYLLABUS BY THE COURT

1.

An employee can commit identity theft, as defined in K.S.A. 2012 Supp. 21-6107, by using the social security number of another to deceive an employer and induce the employer to rely on the deception and provide employment and its benefits. The employee receives an economic benefit from the deception, even if the employee earns those wages.

2.

The Legislature defined a continuing offense in K.S.A. 2012 Supp. 21-6107(a) by providing that identity theft occurs when a defendant is using the personal identifying information of another with the intent to defraud that person or anyone else, in order to receive any benefit.

1

3.

K.S.A. 2012 Supp. 21-6107 gives sufficient notice of prohibited conduct and nothing about the statute makes enforcement inherently arbitrary and discriminatory. The statute is not unconstitutionally vague.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 25, 2015. Appeal from Johnson District Court; BRENDA M. CAMERON, judge. Opinion filed May 21, 2021. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, argued the cause and, *B. Keith Edward*, legal intern, of the same office, was with him on the brief for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, C.J.:  Victor Valdiviezo-Martinez appeals from a jury conviction of identity theft. The conviction arose from allegations that, on or about September 20, 2012, Valdiviezo-Martinez was using the social security number of someone else with the intent to defraud his employer so he could receive a benefit. On appeal, Valdiviezo-Martinez argues the State failed to present sufficient evidence to prove he used the social security number with an intent to defraud someone in order to receive a benefit. He asserts that instead of committing fraud he earned the benefits he received. He also argues the State failed to prove he used the social security number on September 20, 2012. He contends that, if he committed a crime, he did so when he completed paperwork

2

as he began his job in 2005. Finally, he argues the identity theft statute is unconstitutionally vague. We reject his arguments and affirm his conviction.

FACTUAL AND PROCEDURAL BACKGROUND

Valdiviezo-Martinez was involved in a car accident in Overland Park on September 20, 2012. He provided a Mexico-issued identification card with his name on it to police officers investigating the crash. He also provided the police with an insurance card issued to Jovita Arano, whom he referred to as his wife, and a car registration card issued to Victor Arano.

After arresting and booking Valdiviezo-Martinez for driving without a license, the police officer investigating the crash decided to verify Valdiviezo-Martinez' identity. At book-in, Valdiviezo-Martinez listed his employer as a local restaurant, leading the police to contact a co-owner of the restaurant.

The co-owner confirmed that Valdiviezo-Martinez worked at the restaurant. Police obtained copies of the W-4 Valdiviezo-Martinez had completed and signed when he started working at the restaurant on May 30, 2005, and Valdiviezo-Martinez' 2011 W-2. The police learned the social security number on those documents belonged to a man with a different name who resided in the state of Washington.

The State charged Valdiviezo-Martinez with identity theft. The original complaint alleged, in part, that Valdiviezo-Martinez obtained, possessed, used, or purchased someone else's social security number. The State later amended the charge and alleged: "That on or about the 20th day of September, 2012, . . . Valdiviezo-Martinez did then and there unlawfully, willfully and feloniously use any personal identifying information, to

3

wit:  social security number, belonging to or issued to another person, . . . with the intent to defraud that person, or anyone else, in order to receive any benefit."

At the jury trial, the co-owner of the restaurant where Valdiviezo-Martinez had worked testified:

- He and the other owners would not hire anyone without a social security number;

- The paychecks issued to Valdiviezo-Martinez depended on the W-4 form that Valdiviezo-Martinez had completed; and

- The owners relied on Valdiviezo-Martinez' representation that the social security number belonged to Valdiviezo-Martinez when paying him.

The co-owner also testified that Valdiviezo-Martinez received a paycheck on September 19, 2012.

On cross-examination, the co-owner testified that Valdiviezo-Martinez did not steal any money from him or the restaurant, Valdiviezo-Martinez worked overtime when asked, and he would hire Valdiviezo-Martinez again if he could.

A special agent with the Social Security Administration testified that the social security number on Valdiviezo-Martinez' W-4 and W-2 belonged to someone other than Valdiviezo-Martinez. He gave the name of the man to whom the number belonged and testified that the man resided in Washington State and was born in 1990.

At the close of evidence, the trial judge instructed the jury on the elements as charged in the amended complaint, including language specifying the date of offense as being on or about September 20, 2012. The jury convicted Valdiviezo-Martinez. At sentencing, the judge granted Valdiviezo-Martinez probation with an underlying sentence of eight months.

On appeal to the Court of Appeals, Valdiviezo-Martinez argued the State failed to present sufficient evidence for a rational fact-finder to determine beyond a reasonable doubt that (1) he intended to defraud anyone and (2) he committed the offense on September 20, 2012. He also asserted the identity theft statute is unconstitutionally vague. The Court of Appeals affirmed the conviction. *State v. Valdiviezo-Martinez*, No. 111,447, 2015 WL 7693673 (Kan. App. 2015) (unpublished opinion). Judge G. Gordon Atcheson dissented. 2015 WL 7693673, at *6 (Atcheson, J., dissenting).

This court granted review but stayed proceedings pending the outcome of a different case arising from similar facts and involving an identity theft conviction. That case raised the question of whether federal law preempted the State from using the employment eligibility verification form, or I-9, of a defendant who is not a citizen of the United States, or any information, such as a social security number, contained within the I-9 as the basis for a state law identity theft prosecution. The United States Supreme Court held state identity theft prosecutions like this one are not preempted even if based on information, such as a social security number, that can also be found on an I-9. See *Kansas v. Garcia*, 589 U.S. ___, 140 S. Ct. 791, 206 L. Ed. 2d 146 (2020). This court then lifted the stay, and we now exercise jurisdiction over this appeal. See K.S.A. 20-3018(b) (providing for petitions for review of Court of Appeals decisions); K.S.A. 60-2101(b) (Supreme Court has jurisdiction to review Court of Appeals decisions upon petition for review).

5

ANALYSIS

Valdiviezo-Martinez preserved all three issues in his petition for review. In two of those issues, he challenges the sufficiency of the evidence. When a criminal defendant raises issues about the sufficiency of evidence, we examine the trial evidence in the light most favorable to the State and determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. *State v. Pattillo*, 311 Kan. 995, 1003, 469 P.3d 1250 (2020). To make that assessment, we must examine what the State had to prove, and that examination requires us to interpret the identity theft statute.

In interpreting statutes, we grant no deference to the district court or the Court of Appeals. But, like those courts, we seek to determine the Legislature's intent by examining the statute's wording. If that wording is plain and unambiguous, we apply it as written. If it is not clear, we can look to legislative history, background considerations, and canons of construction to help determine legislative intent. *Jarvis v. Kansas Dept. of Revenue*, 312 Kan. 156, 159, 473 P.3d 869 (2020).

Here, as we consider the identity theft statute, the State and Valdiviezo-Martinez disagree about which version of the identity theft statute applies. Their disagreement arises from their differing views of when the crime occurred. That date matters because the substantive law in effect at the time of the crime's commission defines what the State must prove. See *State v. Rice*, 308 Kan. 1510, 1512, 430 P.3d 430 (2018). Valdiviezo-Martinez contends the crime of identity theft, if committed, was completed in 2005 when he filled out the employment forms. But the State charged him with a crime committed on or about September 20, 2012. We will thus compare the 2005 and 2012 versions before we focus on the issues raised by Valdiviezo-Martinez.

6

The version of the statute in place on May 30, 2005, with words significant to the parties' arguments italicized, stated, in part: "Identity theft is knowingly and with *intent to defraud for economic benefit*, obtaining, possessing, transferring, *using* or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor." (Emphases added.) K.S.A. 2003 Supp. 21-4018(a).

The version in place on September 20, 2012, stated, in part: "Identity theft is obtaining, possessing, transferring, *using*, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to defraud that person, or anyone else, in order *to receive any benefit*." (Emphases added.) K.S.A. 2012 Supp. 21-6107(a).

Contrasting key parts of the two provisions helps explain the parties' arguments. We will look separately at the words defining the actus reus—that is, the action or conduct that is an element of a crime—and the mental state required when performing those acts.

Both the 2005 and the 2012 versions of the statute listed several alternative ways to commit the crime. While the lists varied somewhat, both included "*using*" personal identifying information, which was the charge the State brought against Valdiviezo-Martinez. K.S.A. 2012 Supp. 21-6107(a); K.S.A. 2003 Supp. 21-4018(a). And, here, the State charged Valdiviezo-Martinez with using a social security number, an item of identification covered by both versions of the statute. K.S.A. 2012 Supp. 21-6107(e)(6) ("'personal identifying information' includes, but is not limited, to . . . social security number or card"); K.S.A. 2003 Supp. 21-4018 ("[a] Identity theft is . . . using

7

. . . identification documents or personal identification number of another person" and [b] "'[i]dentification documents' means the definition as provided in K.S.A. 21-3830"); K.S.A. 2003 Supp. 21-3830(b) (defining "identification document" to include "social security cards").

On the other hand, the portion of the statute defining the required mental state did change slightly between 2005 and 2012. Valdiviezo-Martinez emphasizes this change. In 2005, the statute required the State to prove Valdiviezo-Martinez acted "knowingly and with intent to defraud for economic benefit." K.S.A. 2003 Supp. 21-4018(a). By 2012, the statute no longer included the word "knowingly" and the word "economic" no longer modified the word "benefit." The 2012 version referred to "any benefit." K.S.A. 2012 Supp. 21-6107(a). Neither parties' arguments focus on the omission of "knowingly" from the statute, but Valdiviezo-Martinez contends the State had to prove an "economic" benefit. We will focus on this argument in Issue 1 below.

Other important words in this mental state element did not change. Both versions of the statute include the same definitions relating to the phrase "intent to defraud." That phrase means "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power with reference to property." K.S.A. 2012 Supp. 21-5111(o); K.S.A. 2003 Supp. 21-3110(9). The Legislature defined "property" as "anything of value, tangible or intangible, real or personal." K.S.A. 2012 Supp. 21-5111(w); K.S.A. 2003 Supp. 21-3110(16). It also defined "deception" as "knowingly creating or reinforcing a false impression," K.S.A. 2012 Supp. 21-5111(e); and "knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact," K.S.A. 2003 Supp. 21-3110(5). Including "knowingly" in the definition of

8

"deception" arguably makes the deletion of that word from K.S.A. 2012 Supp. 21-6107(a) meaningless.

Putting these definitions together, to prove identity theft as charged here, the State could prove Valdiviezo-Martinez committed identity theft by showing he was using someone else's social security number with the intention of knowingly creating or reinforcing a false impression and to induce anyone to rely on the false impression to transfer a right to anything of value, such as wages. If the 2005 statute applies, the value had to be measured in economic terms.

With those elements and definitions in mind, we turn to the parties' specific arguments.

ISSUE 1: *Evidence of Intent to Defraud for Economic—or Any—Benefit Sufficient*

Valdiviezo-Martinez first argues the State failed to present sufficient evidence that he intended to defraud someone for an economic benefit. But, as we have discussed, the State, having charged a crime committed on September 20, 2012, had to prove he acted with an intent to defraud someone for any benefit. Valdiviezo-Martinez alternatively argues the State failed to meet that requirement as well.

The Court of Appeals panel unanimously rejected Valdiviezo-Martinez' argument on this issue and held the State had presented sufficient evidence that Valdiviezo-Martinez acted with an intent to defraud. The majority concluded that "Valdiviezo-Martinez benefitted from improperly using the other person's social security number because his employer relied on the fact that he had provided a social security number in hiring him, retaining him in employment, paying him, and extending to him the benefits

9

of employment status." *Valdiviezo-Martinez*, 2015 WL 7693673, at *2. In dissenting on other grounds, Judge Atcheson agreed. 2015 WL 7693673, at *8 (Atcheson, dissenting in part) (Valdiviezo-Martinez used the social security number "with the intent to defraud the employer and to obtain a benefit in the form of pay").

Valdiviezo-Martinez, in asking us to reverse the Court of Appeals, insists the State presented no evidence he intended to defraud his employer. He claims no fraud occurred because he provided labor and services in exchange for his wages and benefits. In essence, his arguments imply or assert the State must prove that the one deceived suffered an economic harm and the worker received unearned compensation. For support, Valdiviezo-Martinez cites *City of Liberal v. Vargas*, 28 Kan. App. 2d 867, 24 P.3d 155 (2001).

There, the State charged the defendant with identity theft by presenting an employer false documents including what appeared to be personal identifying information. But the information did not belong to any person—the information was purely fictitious. The *Vargas* panel held the Legislature intended to protect the identity of real people, but the State failed to present evidence supporting the theft of anyone's personal identifying information. 28 Kan. App. 2d at 869-70.

In dicta and without performing any statutory analysis, the *Vargas* panel added that, even if the statute covered using fictitious information, the jury could not have found the defendant guilty because there was no evidence of an intent to defraud the employer by stealing money or being compensated for services not rendered. 28 Kan. App. 2d at 870. The panel opined that the evidence showed the defendant used the false documents to obtain the job, not to take money for services not performed. 28 Kan. App. 2d at 870.

10

We disagree with the *Vargas* panel's reasoning. The elements of the identity theft statute relevant to this portion of our analysis require that the defendant intended to deceive another and to induce that person to rely on the deception and to transfer a right or power to property. When the deception involves the use of a social security number of another in an employment situation and the employer relies on the deception to offer employment and then to retain the employee, several benefits flow to the employee. Without listing every benefit that flows from employment, it is sufficient to recognize that employment itself is a thing of value and therefore property as defined by K.S.A. 2012 Supp. 21-5111(w). Even if one of the benefits is wages the employee legitimately earns, a "but for" causal chain is put in motion by the deception; the employer would not have paid wages and the employee would not have received them but for the trickery. See Black's Law Dictionary 535 (11th ed. 2019) (defining "defraud" as "to trick").

The fact an employee like Valdiviezo-Martinez performed services to earn benefits minimizes any economic loss to the employer. But the identity theft statute does not require proof of economic loss or other damage suffered by the one defrauded and induced to transfer property. Accord *State v. Meza*, 38 Kan. App. 2d 245, 248-49, 165 P.3d 298 (2007); *State v. Oswald*, 36 Kan. App. 2d 144, 145-46, 137 P.3d 1066 (2006).

Here, the State presented evidence that Valdiviezo-Martinez deceived the owners of the restaurant where he worked into believing he had a valid social security number issued to him. A co-owner testified the restaurant relied on that deception in offering a job and in issuing paychecks to Valdiviezo-Martinez. From those facts, a rational fact-finder could determine (1) Valdiviezo-Martinez intended to deceive his employer and (2) he intended to induce his employer to rely on that deception and to provide him wages and other employment benefits. Valdiviezo-Martinez' intent to induce the employer to provide him wages and other benefits falls within the broad definitions of "intent to

11

defraud." And property, which includes anything of value, encompasses employment, wages, tax contributions, and other tangible and intangible benefits of value provided by the restaurant to Valdiviezo-Martinez. And those benefits are economic. Whether the State had to prove he intended to deceive for the purpose or receiving "any" benefit or an "economic" benefit, it met its burden.

In sum, the evidence, when considered in the light most favorable to the State, showed that Valdiviezo-Martinez intentionally deceived his employers. And he induced them to continue to rely on his deception so they would transfer property in the form of wages and other employment benefits. A rational fact-finder could have found beyond a reasonable doubt that Valdiviezo-Martinez acted with an intent to defraud and that he received an economic benefit.

ISSUE 2: *Evidence About Use on September 20, 2012, Sufficient*

Valdiviezo-Martinez' second argument relates to the sufficiency of evidence establishing he was using the social security number on September 20, 2012. In making this argument, Valdiviezo-Martinez essentially raises a statute of limitations defense for the first time on appeal.

In doing so, he concedes the date of offense is not an element of a crime. Usually, sufficiency of the evidence relates to a failure to prove the elements of the crime. But Valdiviezo-Martinez argues "the state does have to show that a crime occurred within the statute of limitations. *See* K.S.A. 22-3201(2)." When the State charged Valdiviezo-Martinez, there was no subsection (2) in this statute; instead, the provision was labeled as subsection (b). K.S.A. 2012 Supp. 22-3201(b) does not relate to proof at trial. Rather, it describes what the State must include in an indictment or information: "The precise time

of the commission of an offense need not be stated in the indictment or information; but it is sufficient if shown to have been within the statute of limitations, except where the time is an indispensable ingredient in the offense." K.S.A. 2012 Supp. 22-3201(b).

Here, the State's information included a time of commission—on or about September 20, 2012. The State thus facially complied with the pleading requirement in K.S.A. 2012 Supp. 22-3201(b). It also facially complied with the statute of limitations in K.S.A. 2012 Supp. 21-5107(d), which in 2012 required the State to begin a prosecution against Valdiviezo-Martinez within five years of the crime's commission. (Between July 1, 2005, and 2012 the Legislature extended the statute of limitations from two to five years. Compare K.S.A. 2003 Supp. 31-3106[8] and K.S.A. 2012 Supp. 21-5107[d]).

The charges were filed shortly after September 20, 2012, and an amended complaint was filed May 31, 2013. As a result, based on the way the State brought the charge, Valdiviezo-Martinez had no basis to raise a statute of limitations defense *before* trial.

But "in Kansas the statute of limitations is an affirmative defense that can be waived" by failing to raise the defense *at* trial once the facts underlying the defense are in the record. *State v. Sitlington*, 291 Kan. 458, 463, 241 P.3d 1003 (2010). Here, the parties do not discuss waiver or preservation of this issue, likely because Valdiviezo-Martinez raises the issue as one attacking the sufficiency of the evidence and generally "[t]here is no requirement that a criminal defendant challenge the sufficiency of the evidence before the trial court in order to preserve it for appeal." *State v. Farmer*, 285 Kan. 541, 545, 175 P.3d 221 (2008). This general rule potentially runs contrary to the requirement that a defendant must raise a statute of limitations defense at trial to avoid waiving the defense and to preserve it for appeal, however. See, e.g., *United States v. Arky*, 938 F.2d 579,

13

581-82 (5th Cir. 1991) (collecting federal cases holding a defendant waives or forfeits statute of limitations defense if he or she does not raise it before appeal). Neither the parties nor the Court of Appeals discussed this potential preservation problem or this unusual twist that turns a sufficiency of the evidence issue, which generally relates to elements, into a statute of limitations defense.

Despite these procedural irregularities, we will consider the issue as framed because the State has not raised a preservation or any other procedural concern. Nor did we ask the parties to supplement their arguments because our caselaw holds the statute of limitations is not jurisdictional. *Sitlington*, 291 Kan. at 463. And, if an issue is not jurisdictional, a party waives it by failing to raise it before the Court of Appeals or in a petition or cross-petition for review of a Court of Appeals' decision, even if the issue itself relates to preservation. See *State v. Boeschling*, 311 Kan. 124, 128, 458 P.3d 234 (2020). This means the State waived any preservation argument. We thus leave for another day the job of reconciling the statute of limitations and the affirmative defense cases and of determining whether a sufficiency argument can serve as a vehicle for raising the defense.

We point out these irregularities to prevent future readers from viewing this decision as implicitly suggesting that a party can raise a statute of limitations argument without having raised it at trial. Nor should this decision be read to bless use of a sufficiency argument for matters other than elements.

Turning to the arguments raised, the State contends it presented sufficient evidence that Valdiviezo-Martinez was using the social security number on or about September 20, 2012. It also counters Valdiviezo-Martinez' argument that the alleged

14

offense was complete on May 30, 2005, by arguing the identity theft statute creates a continuing offense.

The Court of Appeals panel focused on the continuing offense aspect of the State's arguments. The majority held identity theft, at least when charged as having been committed by using someone else's personal identifying information, was a continuing offense. *Valdiviezo-Martinez*, 2015 WL 7693673, at *3. Judge Atcheson dissented from this holding. He would have held that the prosecution was barred by the statute of limitations because the offense happened in 2005, and the prosecution did not begin until 2012. 2015 WL 7693673, at *7 (Atcheson, J., dissenting).

The initial step in analyzing any statute of limitations issue is considering when the crime was committed. We do so because K.S.A. 2012 Supp. 21-5107 bars criminal prosecutions if not brought within a specified time after a crime is committed unless an exception applies. The statute provides two alternatives for determining when a crime is committed:  "An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." K.S.A. 2012 Supp. 21-5107(f).

Valdiviezo-Martinez focuses on the first alternative, arguing every element occurred on May 20, 2005. He thus asserts that the State had to charge him within two years of May 20, 2005. See K.S.A. 2003 Supp. 21-3106 (stating two-year limitations period; statute effective in May 2005). The parties have not directly discussed the unit of prosecution and whether the State could have charged Valdiviezo-Martinez with a completed offense committed on May 30, 2005, and a separate offense committed on or about September 20, 2012. See *State v. Schoonover*, 281 Kan. 453, 497-98, 133 P.3d 48

15

(2006) (discussing unit of prosecution test and double jeopardy implications). Because the unit of prosecution could arguably allow for separate occurrences each time property is transferred in reliance on the deceptive use of personal identifying information, we will discuss whether the State met its burden under that scenario without deciding the unpreserved question about the unit of prosecution.

Valdiviezo-Martinez argues, or at least implies, that "using" required him to hand over, write, or utter the social security number on or about September 20, 2012. There are other ways of using something, however, particularly when the alleged act is using information critical to a plan to deceive another and to induce the deceived party to transfer property, such as wages. And that is what the State argues Valdiviezo-Martinez did. See K.S.A. 2012 Supp. 21-6107(a).

The straightforward meaning of the word "using" suggests that a rational fact-finder could determine that Valdiviezo-Martinez was using the social security number of another throughout the seven-year period of his employment. Black's Law Dictionary provides many definitions of this common word, "use." One seems particularly applicable to the evidence presented by the State: "1. To employ for the accomplishment of a purpose; to avail oneself of." Black's Law Dictionary 1855 (11th ed. 2019). When Valdiviezo-Martinez received a paycheck on September 19, 2012, he was employing and availing himself of someone else's social security number to deceive his employer and to induce his employer to transfer—that is, pay—wages.

Contrary to his argument, Valdiviezo-Martinez did not need to commit a physical act to use the number. "Deception" includes "knowingly . . . reinforcing a false impression," K.S.A. 2012 Supp. 21-5111(e); and "knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing

16

fact," K.S.A. 2003 Supp. 21-3110(5). And fraud often occurs through concealment rather than misstatement. See Black's Law Dictionary 802 (11th ed. 2019) (defining fraud as "[a] knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment."); see also K.S.A. 2012 Supp. 21-5111(e) ("Deception" is "knowingly creating or reinforcing a false impression."). The State presented the co-owner's testimony that the restaurant would not have transferred money and other benefits each pay period had they not, at that point in time, been deceived into believing Valdiviezo-Martinez had a valid social security number—that is, if he was not using the social security number.

Thus, examining the evidence in the light most favorable to the State and through the lens of the arguments presented to the jury, we hold the State presented sufficient evidence for a rational fact-finder to have found beyond a reasonable doubt that Valdiviezo-Martinez was using someone else's social security number on or about September 20, 2012.

We reach the same conclusion upon examination of the second alternative in K.S.A. 2012 Supp. 21-5107(f): "An offense is committed . . . if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." The Court of Appeals relied on this alternative in its analysis. See *Valdiviezo-Martinez*, 2015 WL 7693673, at *3-4; 2015 WL 7693673, at *7 (Atcheson, J., dissenting).

K.S.A. 2012 Supp. 21-5107(f) codifies the federal approach to the doctrine of continuing offenses. *State v. Gainer*, 227 Kan. 670, 672-73, 608 P.2d 968 (1980). In *Gainer*, this court emphasized that the doctrine applies only in limited circumstances and requires a clear expression of legislative intent. Without that clear expression, courts

presume the Legislature did not intend to create a continuing offense. 227 Kan. at 672, 673.

This presumption flows from the tension between the purposes of a statute of limitations and the possibility of a long-term course of criminal conduct. The United States Supreme Court discussed this tension in *Toussie v. United States*, 397 U.S. 112, 114-15, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970). It noted that legislatures adopt statutes of limitations to protect individuals from facing punishment after facts have "become obscured by the passage of time," "to minimize the danger of official punishment because of acts in the far-distant past," and to encourage "law enforcement officials promptly to investigate suspected criminal activity." 397 U.S. at 114-15. At times, the doctrine of continuing offenses can conflict with those purposes.

Given these considerations, the United States Supreme Court held the continuing offense doctrine should not be applied "unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." 397 U.S. at 115. If Congress' intent is ambiguous, the Supreme Court directed federal courts to apply the general principle that criminal laws should be construed in favor of the accused. 397 U.S. at 122 (when faced with two choices of interpretation of a criminal statute, courts should not choose the harsher alternative unless Congress has made it clear that was the intent).

Like the United States Supreme Court, this court has recognized that the Legislature can make clear its intent to define a continuing offense through explicit language or by defining a crime that by its nature involves continuing conduct. See

18

*Toussie*, 397 U.S. at 115; *Gainer*, 227 Kan. at 672, 673; *State v. Zimmer*, 198 Kan. 479, 504, 426 P.2d 267 (1967).

First, a legislative body could clearly state that it contemplated a prolonged course of conduct or a continuing offense. *Toussie*, 397 U.S. at 120; see, e.g., 18 U.S.C. § 3284 (20) ("[t]he concealment of assets of a debtor in a case under title 11 shall be deemed to be a continuing offense"). Here, neither the 2005 nor the 2012 version of the identity theft statute explicitly states it is an ongoing crime. See K.S.A. 2003 Supp. 21-4018(a); K.S.A. 2012 Supp. 21-6107(a).

Second, the legislative body could define a crime where ongoing conduct is inherent in the nature of the offense. The *Toussie* Court described conspiracy as such an offense because it "continues as long as the conspirators engage in overt acts in furtherance of their plot. . . . It is in the nature of a conspiracy that each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Toussie*, 397 U.S. at 122. Similarly, in *Zimmer*, 198 Kan. 479, this court recognized kidnapping inherently involved a course of conduct. The crime is defined as "the taking or confining of any person, accomplished by force, threat or deception, with the intent to hold such person" for various nefarious purposes. K.S.A. 2020 Supp. 21-5408. Although the statute does not explicitly state that it is a continuing offense, it describes a course of conduct that, once begun, does not end until the victim is no longer detained. 198 Kan. at 504; see *United States v. Rodriguez-Moreno*, 526 U.S. 275, 281, 119 S. Ct. 1239, 143 L. Ed. 2d 388 (1999).

On the other hand, the crime of theft—the crime at issue in *Gainer*—did not describe ongoing conduct and is not a continuing offense. 227 Kan. at 674. A defendant completes the crime of theft upon taking possession of the property and no language in

19

the theft statute contemplates further conduct. 227 Kan. at 673-75; see also *State v. Kunellis*, 276 Kan. 461, 468-69, 78 P.3d 776 (2003) (theft is complete when individual takes possession of property); *State v. Palmer*, 248 Kan. 681, 690, 810 P.2d 734 (1991) (theft not a continuing offense).

As with theft, some ways of committing identity theft relate to a singular act. Obtaining the personal identifying information of someone else has no element of an ongoing nature. Nor does transferring, selling, or purchasing any personal identifying information suggest ongoing conduct, even if the crime has continuing effects after completion.

On the other hand, to say one is using something conveys ongoing action and thus using personal identifying information meets the *Toussie* test for defining a continuing offense because it "clearly contemplates a prolonged course of conduct." *Toussie*, 397 U.S. at 120. Like the ongoing conspiracy at issue in *Toussie* or the kidnapping at issue in *Zimmer*, using the personal identifying information of someone else brings a daily renewed threat of the substantive evil the Kansas Legislature sought to prevent. The Legislature described a course of conduct of using someone's personal identifying information that, once begun, does not end until the use ends. See K.S.A. 2003 Supp. 21-4018(a); *Toussie*, 397 U.S. at 122; *Zimmer*, 198 Kan. at 504.

The legislative definition of "deception" also conveys ongoing conduct. It means "knowingly creating or reinforcing a false impression," K.S.A. 2012 Supp. 21-5111(e); and "knowingly and willfully making a false statement or representation, express or implied, pertaining to a present or past existing fact," K.S.A. 2003 Supp. 21-3110(5). The criminal concept of reinforcing a false impression resembles concealment of fraud in civil cases, which can result in a delayed accrual or tolling of the statute of

20

limitations. See *OMI Holdings, Inc. v. Howell*, 260 Kan. 305, 344-45, 918 P.2d 1274 (1996) (discussing the elements for a claim for fraud by silence or by concealment); *Friends University v. W.R. Grace & Co.*, 227 Kan. 559, 564, 608 P.2d 936 (1980) (explaining the conditions under which concealment of a cause of action will toll the applicable statute of limitations). In essence, the law generally recognizes different statute of limitations considerations when the crime or cause of action relates to fraud because continuing action is contemplated.

In sum, because the Legislature clearly defines the continuing crime of identity theft arising from using the personal identifying information of another, we need not look to legislative history. *University of Kan. Hosp. Auth. v. Board of Comm'rs of Unified Gov't,* 301 Kan. 993, 998, 348 P.3d 602 (2015) ("[I]n determining legislative intent, the starting point is not legislative history; rather, we first look to the plain language of the statute, giving common words their ordinary meaning.").

Turning to the evidence, as we have discussed, the State presented proof on which a rational fact-finder could conclude that Valdiviezo-Martinez continued to use the social security number to deceive his employer throughout his employment at the restaurant and the fraud induced ongoing transfers of property with each pay period.

Thus, the State presented sufficient evidence when viewed through either the lens of all the elements occurring on or about September 20, 2012, or the lens of identity theft being a continuing offense that had not terminated before a date on or about September 20, 2012.

ISSUE 3: *Identify Theft Statute Not Unconstitutionally Vague*

Finally, Valdiviezo-Martinez argues K.S.A. 2012 Supp. 21-6107 fails to clearly define what conduct it makes criminal, and it is thus unconstitutionally vague. More specifically, he contends the "intent to defraud" element is too vague.

"[T]he test to determine whether a criminal statute is so vague as to be unconstitutional entails two related inquiries: (1) whether the statute gives fair warning to those potentially subject to it, and (2) whether it adequately guards against arbitrary and unreasonable enforcement." *State v. Bollinger*, 302 Kan. 309, 318, 352 P.3d 1003 (2015); see *Grayned v. City of Rockford*, 408 U.S. 104, 108-09, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972).

Although Valdiviezo-Martinez does not specifically say so, he challenges the constitutionality of the identity theft statute on its face. Convincing the court that a statute is facially unconstitutional presents a difficult challenge for appellants because such challenges rest on speculation, conflict with the principle of judicial restraint, and threaten to undermine the democratic process. *Bollinger*, 302 Kan. at 318-19. To establish that a statute is unconstitutional on its face, the appellant has the burden to show that there is no set of circumstances under which the statute would be valid. *In re Weisgerber*, 285 Kan. 98, 105, 169 P.3d 321 (2007) (citing *Injured Workers of Kansas v. Franklin*, 262 Kan. 840, 850-51, 942 P.2d 591 [1997]). If a law does not limit constitutionally protected conduct, it "should be upheld unless it 'is impermissi[bly] vague in all of its applications.'" *Hearn v. Overland Park*, 244 Kan. 638, 641, 772 P.2d 758 (1989).

22

A statute is not unconstitutionally vague just because a scenario can be imagined in which innocent conduct could be penalized. "[U]ltimate, god-like precision" is not required by the Constitution. *Miller v. California*, 413 U.S. 15, 28, 93 S. Ct. 2607, 37 L. Ed. 2d 419 (1973). "That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense." *Hearn*, 244 Kan. at 641. "The 'mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge.'" *United States v. Williams*, 553 U.S. 285, 303, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008).

In arguing the identity theft statute is too vague, Valdiviezo-Martinez never argues it is impermissibly vague in all situations. On that ground alone, his argument fails. But it also fails upon examination of the hypotheticals he offers. He describes hypothetical scenarios in which seemingly innocent behavior would fall under this umbrella. In the first scenario he describes individuals who withdraw money from an ATM and use someone else's card—even if a person has the cardholder's permission, Valdiviezo-Martinez argues the cardholder and the actor are intending to deceive the bank by making the bank believe that person is the cardholder. He makes a similar argument about a person who has a pizza delivered to their friend's house because that person is deceiving the pizza company as to that person's address.

Valdiviezo-Martinez' hypotheticals fall short because the identity theft statute and the criminal definitions statute both require that "intent to defraud" include an underlying intention to deceive. K.S.A. 2012 Supp. 21-6107(a); K.S.A. 2012 Supp. 21-5111(o). "Deception" is defined as "knowingly creating or reinforcing a false impression." K.S.A. 2012 Supp. 21-5111(e). The problem with Valdiviezo-Martinez' hypothetical situations is that they involve situations in which the activity was authorized—authorized activity is

23

not deception. See Black's Law Dictionary 165 (11th Ed. 2019) (defining authorize as "[t]o give legal authority; to empower").

Moreover, Valdiviezo-Martinez makes no claim that his activity of using the stolen social security number is constitutionally protected or that K.S.A. 2012 Supp. 21-6107(a) does not apply to it. He also does not show that K.S.A. 2012 Supp. 21-6107(a) fails to adequately describe the prohibited conduct, or that the enforcement was arbitrary in his case.

The words used in K.S.A. 2012 Supp. 21-6107 are commonly understood or are defined, giving them a settled meeting. The statute gives fair warning and sufficient notice of the prohibited conduct. And Valdiviezo-Martinez has not shown that the enforcement is arbitrary and discriminatory. Plus, the statute provides sufficient guidance to prevent inherently arbitrary or discriminatory enforcement. Finally, the statute is constitutional as applied to Valdiviezo-Martinez' specific behavior. He has thus failed to meet his burden of demonstrating facial unconstitutionality.

CONCLUSION

Valdiviezo-Martinez fails to persuade us that his conviction for identity theft should be reversed for any of the reasons he raises on appeal.

Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

24

BEIER, J., not participating.

MICHAEL E. WARD, Senior Judge, assigned.[1]

\* \* \*

BILES, J., dissenting:  Just because a defendant's criminal conduct on a particular day provides the defendant with a long-term benefit does not make the crime continuing in nature—only its statutory elements can do that. In this instance, the elements for identity theft do not create a continuing offense, so I dissent from the majority's conclusion that it does.

The alleged crime must be a continuous offense for the State to pursue its otherwise time-barred prosecution of Valdiviezo-Martinez, or else his passive receipt of a benefit stemming from his earlier use of another's social security number must constitute an independent crime. The State alleges he gave someone else's social security number in 2005 when he completed and signed a W-4 form, so he could get a job at a restaurant where he worked from 2005 through September 2012. And based on this, the State charged:

> "*on or about the 20th day of September, 2012*, . . . Victor Valdiviezo-Martinez *did* then
> and there unlawfully, willfully and feloniously *use* any personal identifying information,
> to wit: social security number, belonging to or issued to another person, to wit: [D.T.],

---

[1]**REPORTER'S NOTE:**  Senior Judge Ward was appointed to hear case No. 111,447 vice Justice Beier under the authority vested in the Supreme Court by K.S.A. 20-2616.

25

with the intent to defraud that person, or anyone else, in order to receive any benefit, . . . in violation of K.S.A. 21-6107, K.S.A. 21-6804 and K.S.A. 21-6807. (identity theft)." (Emphases added.)

So is identity theft a continuous offense? K.S.A. 2012 Supp. 21-5107(f) provides legislative guidance: "An offense is committed either when every element occurs, *or, if a legislative purpose to prohibit a continuing offense plainly appears*, at the time when the course of conduct or the defendant's complicity therein is terminated. Time starts to run on the day after the offense is committed." (Emphasis added.) The majority correctly notes K.S.A. 2012 Supp. 21-5107(f) codifies the federal approach to the continuing offense doctrine, which applies at the federal level only in limited circumstances and with a clear expression of congressional intent. Slip op. at 17-19.

So what does the Kansas statute say? K.S.A. 2012 Supp. 21-6107(a)—the 2012 version for identity theft—provides:

"*Identity theft is* obtaining, possessing, transferring, *using*, selling or purchasing any personal identifying information, or document containing the same, belonging to or issued to another person, with the intent to defraud that person, or any one else, in order to receive any benefit." (Emphases added.)

Similarly, the statutory version in effect in 2005, K.S.A. 2003 Supp. 21-4018(a), provided:

"*Identity theft is* knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, *using* or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number of another person other than that issued lawfully for the use of the possessor." (Emphases added.)

26

The majority concedes "neither the 2005 nor the 2012 version of the identity theft statute *explicitly states* it is an ongoing crime." (Emphasis added.) Slip op. at 19. In other words, and in K.S.A. 2012 Supp. 21-5107(f)'s exacting language, a legislative purpose to make identity theft a continuing offense does not "plainly" appear. Yet the majority still divines a continuing offense. I disagree.

When interpreting "using," the majority focuses on the crime's incidental effect, i.e., receiving paychecks, even though that is not an element of the identity theft crime. The majority contends that once the use begins, identity theft "does not end until the use ends." Slip op. at 20. In its view, Valdiviezo-Martinez' use continued throughout his employment and ended on or about September 20, 2012, because there were "ongoing transfers of property with each pay period." Slip op. at 21.

But under K.S.A. 2012 Supp. 21-6107(a)'s plain language, the realization of "receiv[ing] any benefit" is not a part of the prohibited act—regardless of the actual success or failure of what a defendant intended when they used someone else's social security number. The crime is completed once they used it with intent to defraud someone to gain any effect. What occurs after this use is not a criminal act under the statute, so it should not affect our analysis of this issue.

Similarly, the prohibited action under the identity theft statute is not deception (with intent to defraud the employer) as the majority contends. Slip op. at 6-8. Deception is part of this crime's mens rea element. The criminalized conduct—the actus reus—is "using" the information and that happened in 2005. So under the statute's plain language, a defendant may intend to deceive an employer to get a job by using someone else's identifying information. But in this instance, there is no other overt act after Valdiviezo-

27

Martinez filled out the initial payroll information in 2005. Stated more simply, a defendant may be relying on the employer's continuing *false belief* about the defendant's work status to remain employed and receive a paycheck, but that is not what this statute criminalizes, so the majority's alternate "unit of prosecution" rationale suffers a similar fate as its continuous offense rationale because there was no crime committed on September 20, 2012.

The State charged Valdiviezo-Martinez with committing identity theft "*on or about* the 20th day of September, 2012." (Emphasis added.) But what did he do "on or about" that date? Again, we have legislative guidance. K.S.A. 2012 Supp. 21-5201 provides requirements for crimes of voluntary acts or omissions. Subsection (a) states, "A person commits a crime only if such person voluntarily engages in conduct, including an act, an omission or possession." But subsection (b) cautions that "[a] person who omits to perform an act *does not commit a crime unless a law provides that the omission is an offense or otherwise provides that such person has a duty to perform the act*." (Emphasis added.) The identity theft statute contains no such language of omission.

Granted, writing down someone else's social security number with intent to deceive an employer about your work eligibility to receive a benefit constitutes identity theft; but Valdiviezo-Martinez only did this once in 2005, so assuming the facts as alleged, he completed his crime in 2005. Yet the majority tries to avoid the obvious by focusing on the employer continuing to pay Valdiviezo-Martinez for work done in 2012. In doing so, the majority alters the statute's plain meaning. It suggests K.S.A. 2012 Supp. 21-6107(a) makes it a crime for Valdiviezo-Martinez to "use" his employer's mistaken belief that the social security number—provided more than six years earlier—belonged to Valdiviezo-Martinez because he did not correct the employer's belief before receiving paychecks in 2012. But that is not an act—it is an omission.

28

The State does not allege Valdiviezo-Martinez presented the social security number to receive his paychecks, so their issuance is "more aptly characterized as effects" of "using" someone else's identity in 2005 to obtain the employment at the restaurant. *State v. Valdiviezo-Martinez*, No. 111,447, 2015 WL 7693673, at \*9 (Kan. App. 2015) (unpublished opinion) (Atcheson, J., dissenting). Put simply, our identity theft statute does not require someone who violates it to come forward and correct the misinformation or someone's misimpression. So even if the majority is correct that a hypothetical defendant may engage in some continuous form of "using" personal identifying information to receive a benefit that is not what happened in this case. And as noted earlier, actually obtaining a benefit is not even a part of the identity theft offense.

The majority also correctly references the United States Supreme Court decision *Toussie v. United States*, 397 U.S. 112, 114-15, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970), as persuasive authority but gives only lip service to what I view as its fairly tough criteria for determining when a law creates a continuing offense. The Fifth Circuit applied the *Toussie* test to the federal identity theft statute to decide whether a previous "use" of an immigration document "knowing it to be forged, counterfeited, altered, or falsely made" or "procured by fraud or unlawfully obtained," constituted a continuing offense. *United States v. Tavarez-Levario*, 788 F.3d 433 (5th Cir. 2015). In concluding the statute did not create a continuing offense, the court explained:

> "First, under *Toussie*, the analysis of whether a crime constitutes a continuing offense involves examining the offense itself, not the defendant's particular conduct. Second, *the fact that a particular defendant's conduct provided long-term benefits to that defendant does not mean that his offense is a continuing one*. See [*United States v. Dunne*, 324 F.3d 1158, 1165 (10th Cir. 2003)] (an offense was not a continuing one

29

simpl[y] because the defendant 'committed a crime which had continuing effects after its completion'); *United States v. Hare*, 618 F.2d 1085, 1086-87 (4th Cir.1980) (rejecting the argument that improper receipt of anything of value for performance of an official act was a continuing offense where the defendant received a loan that provided benefits over a prolonged period). Instead, the nature of the offense itself must be such that it inherently involves criminal activity of an ongoing or continuous character. *Even a crime that naturally occurs in a single, finite incident can produce prolonged benefits to an offender; this does not mean that the statute of limitations refrains from running until all benefits of the criminal act dissipate.* Thus, we conclude that the 'nature' of this offense is not 'such that Congress must assuredly have intended that it be treated as a continuing one.' [Citations omitted.]" (Emphases added.) 788 F.3d at 440-41.

In *Tavarez-Levario*, law enforcement stopped a commercial vehicle in 2014 driven by the defendant who admitted he did not have proper documentation authorizing him to be in the United State legally. Investigators later discovered the defendant had presented a counterfeit green card and counterfeit social security card in 2009 to obtain employment with this company as a driver. And like Valdiviezo-Martinez, they charged the defendant with "use" of a counterfeit immigration document to maintain his continued employment. But the Fifth Circuit concluded the statute met neither prong of the *Toussie* test, so the prosecution was time barred. 788 F.3d at 437.

For these reasons, I would reverse the conviction because the State charged Valdiviezo-Martinez after the Kansas statute of limitations expired.

ROSEN and WALL, JJ., join the foregoing dissent.